## 76122. THE STATE v. HAWKINS.

(371 SE2d 668)

Beasley, Judge.

The State appeals the sustaining of defendant's motion to suppress in a case in which the defendant was indicted for possession of marijuana in violation of the Controlled Substances Act. OCGA § 16-13-30.

The charge against defendant resulted from a search, pursuant to a warrant, of Roy Hyde's home. The warrant was based upon the affidavit of a GBI agent, relying upon a confidential informant who had furnished correct information regarding drugs five times within the previous four years. The informant had seen methamphetamine which was packaged for resale and was sold to other individuals at Hyde's home. Based upon the proof offered that drug transactions were taking place in Hyde's home, the warrant issued with a "no knock" provision for reasons of police safety and to avert drugs destruction or concealment. It further provided that "other persons" might be searched without naming or otherwise describing them. The written reason given in the affidavit was the information that drug sales were being transacted there, and at the motion hearing, the officer further stated that the main purpose of frisking the persons present before searching the premises is "[s]imply to protect the officers that (sic) are executing the warrant."

Defendant and several other men were present in the living room of Hyde's residence when the officers entered it. A GBI agent was in charge of the operation and gave instructions for a pat-down of all individuals present, before the premises were searched, in order to insure the absence of weapons in the possession of any of them and to prevent the destruction of evidence. A sheriff's investigator testified that, in performing a pat-down search of defendant, he noticed "a springy type substance" in defendant's pocket which aroused his suspicion because he had felt marijuana "through pants pockets before." The officer retrieved a small plastic bag containing a substance later identified as marijuana. In response to questioning, he stated that defendant took no action indicative of either having a weapon or of concealing contraband before he started the pat-down.

Defendant moved to suppress the fruits of the search as unauthorized by the Fourth and Fourteenth Amendments "and the Constitution of the State of Georgia." He contended that, because he was merely a visitor in the house and was not named in the warrant, the search was unreasonable in that there was absent an independent articulable basis amounting to probable cause. Since defendant never addressed the state constitutional ground, below or here, we do not consider it. *State v. Camp*, 175 Ga. App. 591, 593 (1) (333 SE2d 896) (1985). His position was and is that OCGA § 17-5-28, construed so as

to conform to the Fourth and Fourteenth Amendments, proscribed this search and seizure. The State argues that the federal standards were met in the application of the code's authority here. These two conflicting views of the federal constitutional requirement form the issue.

OCGA § 17-5-28 provides that the officer executing a search warrant "may reasonably detain or search any person in the place at the time: (1) To protect himself from attack; or (2) To prevent the disposal or concealment of any instruments, articles or things particularly described in the search warrant." The State relies on both of the stated purposes.

1. As to the disposal or concealment of drugs:

*Willis v. State*, 122 Ga. App. 455 (177 SE2d 487) (1970), held: "On a warrant for the search of a designated apartment, its tenants, and others present who may reasonably be involved in the use, possession and sale of illicit drugs, based on an affidavit showing that the premises have been under surveillance and frequented by known drug users together with other information concerning the sale of drugs on the premises, it is not unreasonable to search persons found in a room with the tenants at the time of the search to whom it would have been possible for the persons named in the warrant to pass on the evidence for the purpose of concealment, since a thorough search of the premises would otherwise be impossible." See *Jackson v. State*, 129 Ga. App. 901, 905 (1) (201 SE2d 816) (1973), which permitted the search of "other persons" when so designated in the warrant.

In cases where searches have been approved, there has been recognition of the limitation imposed by law and it was determined that one of the two statutory grounds was present so that the search was within the scope of the warrant. See *Campbell v. State*, 139 Ga. App. 389, 390 (2-4) (228 SE2d 309) (1976), where there was sufficient evidence to support justification under ground two, disposal of evidence; *State v. Shope*, 147 Ga. App. 119 (248 SE2d 188) (1978), which permitted the search of "other persons" where a purse was found " 'stuck down in a chair like it had been pushed away.' " See also *Gumina v. State*, 166 Ga. App. 592, 595 (305 SE2d 37) (1983), and *Morris v. State*, 170 Ga. App. 302, 303 (1) (316 SE2d 860) (1984).

Two recent opinions by this court have repeated the theme pronounced by *Willis*, supra. In *Clark v. State*, 184 Ga. App. 380, 382 (3) (361 SE2d 682) (1987), the proof offered to the magistrate showed a named individual was "selling, storing and concealing" contraband at the described location. A search of a visitor for the purpose of preventing disposal or concealment of the contraband was authorized. *Jenkins v. State*, 184 Ga. App. 844, 846 (363 SE2d 35) (1987), involved a residence where drug activity and transactions were taking place and a warrant which authorized the search of "other persons."

Relying upon *Willis* and *Clark*, it was held that a search of a visitor not named in the warrant was not unreasonable under the circumstances presented to the officer when the warrant was executed.

Execution of a warrant occurs in a dynamic situation, a fact contemplated by the authority to search. In addition, it is executed after the events which gave it rise occurred and at a time when additional facts are introduced into the picture. This, too, is contemplated by the warrant. To search other persons under subsection two, there must be a nexus between what the officers are authorized to search for, based on the criminal activity which they had probable cause to believe was and/or still is occurring and which prompted the warrant, the nature of the evidence sought, the environment in which the search is authorized, and the person searched. There must be a connection between that person and the activity which logically leads to a belief that the person is in possession of a targeted item. In the words of *Willis* as quoted and relied on in *Jenkins*, supra at 846: the person searched must at that time be one "who might reasonably be involved in the crime. . . ."

What the code and the constitution prohibit when there is a warrant, is a *general* search. It must be *confined* to the legitimate purpose. Mindful of the circumscription, we conclude that the officer was authorized under the circumstances to conduct the search of Hawkins for items which were the stated objects in the search warrant. *Jenkins*, supra; *Clark*, supra; *Willis*, supra.

2. As to the safety of the officers:

Were the search deemed not authorized under the principle stated in subdivision two of the code section, it was permitted by the authority to search for weapons as a precaution for the protection of the officers from harm, as permitted by subdivision one. In order to carry out their duty to search the residence, the officer was authorized to assume that he and his colleagues could not be harmed through use of a weapon possessed by one of the occupants. See the discussion of this basis in *Michigan v. Long*, 463 U. S. 1032 (103 SC 3469, 77 LE2d 1201) (1982).

3. Following through on this alternative basis, during the search for weapons probable cause to search for contraband arose, because of what was detected. Thus the further search of Hawkins' pocket was also authorized, if not by the warrant as limited by OCGA § 17-5-28, then by the exigent circumstances which would permit a warrantless search of this person unnamed in the warrant for the premises.

*Judgment reversed. Banke, P. J., concurs. Birdsong, C. J., concurs in the judgment only.*

BIRDSONG, Chief Judge, concurring in judgment only.

I concur with portions of the majority opinion and with the judg-

ment, but I cannot concur with all that is held in Division 1. Analysis of cases cited and of the wording used by the majority in stating what they held, leads me to believe that the majority espouses a search of "other persons" on the premises of a drug dealer without compliance with OCGA § 17-5-28.

*Campbell v. State*, 139 Ga. App. 389 (228 SE2d 309), cited by the majority, states the general law in Georgia: "With particular regard to the 'other persons' clause in this warrant, we note that this language gives police no authority to search persons other than [the specific person named in the warrant] unless such search falls within the ambit of Code Ann. § 27-309 [now OCGA § 17-5-28]. Language identical to that contained in this warrant was considered in our opinion, issued this month, in *Smith v. State*, 138 [sic] Ga. App. 129, wherein we stated that [OCGA § 17-5-28] 'describes the maximum extent to which the particularity of description required by the Fourth Amendment may be encroached upon by the practical necessities of the search environment. [Cits.] Thus, if defendant's search is to be upheld on the basis of the warrant, the state must demonstrate that the officer acted under either of the two justifications provided by [OCGA § 17-5-28].' See also *Wallace v. State*, 131 Ga. App. 204 (205 SE2d 523).

"[OCGA § 17-5-28] allows a very limited search of persons present on the premises at the time of the search to look only for weapons or for the items particularly described in the warrant. . . .

"In conjunction with *Terry v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889), this right is limited to a pat-down of the person's outer clothing." Id. at 390-391. This court phrased the general rule very clearly and very succinctly in *Wyatt v. State*, 151 Ga. App. 207, 208 (259 SE2d 199): " 'The courts of this state have often held that *searches of persons not named in a search warrant but found on the premises* to be searched *are illegal absent independent justification for a personal search.*' "

One further reason for my failure to follow the majority is that contained in *Ybarra v. Illinois*, 444 U. S. 85, 86 (100 SC 338, 62 LE2d 238). Illinois has an "other persons" statute almost identical to Georgia's statute. The Supreme Court held: "The Fourth and Fourteenth Amendments will not be construed to permit *evidence searches* of persons who, at the commencement of the search, are on 'compact' premises subject to a search warrant, *even where the police have a 'reasonable belief' that such persons 'are connected with' drug trafficking and 'may be concealing or carrying away the contraband.*' "

Georgia law is in agreement that " '[a] person does not lose the protection of the Fourth Amendment by entering the apartment of another. [Cits.] Neither do a person's effects.' " *Hayes v. State*, 141 Ga. App. 706, 708 (234 SE2d 360); *Campbell*, supra at 615. The law in

Georgia on this point is well settled, that searches of "other persons" on premises being searched under a warrant are illegal, absent independent justification for a search of the person. *Bundy v. State*, 168 Ga. App. 90 (308 SE2d 213); *Hawkins v. State*, 165 Ga. App. 278 (300 SE2d 224); *Childers v. State*, 158 Ga. App. 613 (281 SE2d 349); *Wyatt v. State*, supra at 208; *Hayes v. State*, supra at 708; *Smith v. State*, 139 Ga. App. 129, 130 (1) (227 SE2d 911); *Brown v. State*, 133 Ga. App. 500 (211 SE2d 438).

Accordingly, I concur in judgment only as to Division 1, and concur specially as to Divisions 2 and 3.

DECIDED JULY 14, 1988.

*Roger G. Queen, District Attorney*, for appellant.

*George J. Thomas II*, for appellees.