## 76082. BONDS v. THE STATE.
### (372 SE2d 448)

BEASLEY, Judge.

Frances Bonds was indicted in three counts, of possession and control, with intent to distribute, of over an ounce of marijuana (OCGA § 16-13-30 (j)); trafficking in cocaine by being in actual possession of more than 28 grams thereof (OCGA § 16-13-31 (a)); and possession and control of cocaine, with intent to distribute it (OCGA § 16-13-30 (b)). She was convicted of the latter two charges and of possession of less than an ounce of marijuana (OCGA § 16-13-2 (b)), a misdemeanor.

Appellant's first and second enumerated errors are that the trial court erred in denying appellant's motion to suppress and in overruling appellant's objection to the introduction into evidence of items seized from appellant's purse.

The following general principles of law apply: (a) this court cannot consider factual allegations in the briefs of the parties which are not supported by evidence contained in the record, *Konscol v. Konscol*, 151 Ga. App. 696 (1) (261 SE2d 438); (b) in reviewing a suppression motion or an objection made at trial to the admission of evidence, which was the result of an alleged illegal search or seizure, this court can consider all relevant evidence introduced at a pretrial hearing, an appropriate post-trial hearing, or at trial, *Sanders v. State*, 235 Ga. 425, 431-432 (219 SE2d 768); (c) the burden of proving that search and seizure were lawful rests with the State, see e.g., OCGA § 17-5-30 (b).

Certain items were found in Mrs. Bonds' purse when it was searched in execution of a search warrant. The warrant was issued, with a "no-knock" provision, when the magistrate was satisfied by the detective's affidavit that he had reason to believe that on Lenny Bonds "and any other persons on the (residential) premises who might reasonably be involved in" violations of the controlled substances act, there was presently being concealed marijuana and hashish. Challenged is the execution of the warrant, OCGA § 17-5-28, (not its issuance or its provisions) in terms of the Fourth and Fourteenth Amendments. No state constitutional claim is advanced so such will

not be addressed. See *State v. Camp*, 175 Ga. App. 591, 592 (1) (333 SE2d 896) (1985).

The affidavit for the warrant spelled out that an informant gave information that he had recently observed marijuana and hashish being stored at Lenny Bonds' residence and that Lenny receives drugs from his father Linzie Bonds. The officer affiant stated that he and the informant saw a white Cadillac at the premises, which the informant said was Linzie's. The officer also stated that he knew Linzie, that Linzie was known to be armed at times, and that the informant told him that Linzie keeps a pistol with him.

After the warrant was issued and before it was executed, the police watched Lenny Bonds' home for several days. An unspecified number of people was observed visiting the premises, staying for a short time and leaving. One of the cars observed was a white Cadillac. It was reported that appellant and her husband would visit their son's home several times a week.

When the police entered the residence after announcing their identity, Mrs. Bonds was sitting on the couch alone, with the purse a few inches away directly next to her. Since it was in her immediate area, it was seized to prevent her access to what was in it. It was not immediately searched because the officers first secured the premises by accounting for all occupants. In securing the premises so as to assure control of it and the occupants and in commencement of the warrant's execution, it was then searched while the officer was just "a few feet, five or six" from her, so that the purse could be returned to her if its contents were innocent. In it, however, were a makeup-type bag which contained three plastic bags of white powder, one of them containing twelve smaller plastic bags of white powder and another containing ten plastic bags of white powder, and a hand-rolled cigarette; scales with white powder residue; a .38 caliber revolver; a digital beeper; and Mrs. Bonds' driver's license. The white powder was found to be constituted of about 50 percent cocaine and to weigh over 64 grams.

At the time the police entered, two teenage girls were also in the living room occupied by Mrs. Bonds, and her husband, Linzie Bonds, was in the hallway. Although the officer did not yet know at the moment of the purse search that she was Linzie's wife, it was reasonable to believe that she had come with him since his white Cadillac was parked outside.

The officer testified that the purse was searched because it was in the premises to be searched and because of the nature of what was being searched for (marijuana and hashish); that is, it could be holding such items, since it was believed that contraband was being repeatedly brought into the premises by a man who was right then present. It was reasonable to believe that some of the drugs were

concealed in the purse for transport to the premises. As a matter of fact, that is exactly what Linzie testified had been done, demonstrating that it was not an unreasonable belief.

The very reason for the no-knock allowance, that is, easy concealment or destruction, gave reason as well for a search of the purse, because of the nature of what was sought by the warrant. The warrant sought evidence of illegal drug activities which, based on the affidavit regarding "storage," perforce and as a matter of logic necessitated bringing drugs into the residence. This is similar to the relationship between information about ongoing sales at the premises and the "other persons" authorization upheld in *Jenkins v. State*, 184 Ga. App. 844 (363 SE2d 35) (1987). Thus a container then on the premises, capable of holding the evidence sought and having been brought by a person reasonably believed to be connected with the named source, had a nexus with the targeted criminal activities. See *Blount v. State*, 181 Ga. App. 330, 335 (4) (352 SE2d 220) (1986). The purse's owner was not a "mere" visitor, as in *Childers v. State*, 158 Ga. App. 613 (281 SE2d 349) (1981), and *Hawkins v. State*, 165 Ga. App. 278 (300 SE2d 224) (1983). Importantly, the warrants in *Childers v. State*, supra, and *Hawkins v. State*, supra, did not contain language authorizing the search of other persons present on the premises who might reasonably be involved in the subject criminal activity.

During surveillance before the warrant was obtained, cars were seen coming and leaving the residence after short stops, and on this occasion, a person came to the door while the police were inside; he was searched and a controlled substance found. The officer knew there had been traffic to the residence that very day, and the police were particularly watching for Linzie Bonds' white Cadillac, which was there when they went in. The reason they were watching for it and him was that they had information that he was taking contraband drugs to his son and they were stored at the residence.

There was a second, independent reason given by the officer for the search: to fully secure the people found on the premises and the things near the people, for the officers' safety. The officer who searched the purse had information that there were weapons at the location.

This physical inquiry was less invasive than searching her *person*, which likely would not normally be done in the absence of a female officer, and it would be reasonable to believe that if a woman with a purse had a weapon it would be in the purse rather than on her person. Patting down a person, moreover, would reveal a weapon to touch. Merely patting down a purse, even if it was pliable, would not do so as the nature of the objects felt would not necessarily identify them as non-weapons. The search for weapons must only "be confined in scope to an intrusion reasonably designed to discover guns, knives,

clubs, or other hidden instruments for the assault of the police officer." *Wyatt v. State*, 151 Ga. App. 207, 210 (1) (a) (259 SE2d 199) (1979), quoting earlier cases.

With regard to the weapons aspect, this was nothing more nor less, at the least, than a *Terry*-type search of the purse to which Mrs. Bonds had access when the police arrived and of which would again have control when the officer left the room. *Terry v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968). That is, it was an authorized protective search for weapons. See also *Gumina v. State*, 166 Ga. App. 592, 595 (305 SE2d 37) (1983) regarding the applicability of OCGA § 17-5-28 and the search for weapons. As repeated and discussed in *Michigan v. Long*, 463 U. S. 1032, 1050 (103 SC 3469, 77 LE2d 1201) (1983), " '(t)he issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.' " The officer's prudence does not amount to unconstitutional intrusion on Frances Bonds' Fourth and Fourteenth Amendment right against unreasonable searches and seizures.

Checking this purse was not more invasive or less reasonable than checking *all* purses before allowing persons with public business to enter courthouses or allowing persons with private business to enter airplane departure areas of airports, which are common. Here there was at least a search warrant for the premises, a private residence, in which this purse was by its nature a holding object and one capable of concealment of such items as drugs or weapons. And the neutral and detached magistrate had found probable cause to believe that "other persons" present, under the circumstances existing when the warrant would be executed, would be in possession.

In this case, the discovery of the very items sought tends to show that the pre-discovery belief aroused by the environment was not an unreasonable basis for the cautionary action.

Had the gun and the contraband not been secured quickly and before the officer left Mrs. Bonds to participate in the further search of the premises, she would have been able to remove and secrete or destroy the concealed contraband and use the gun. What was he supposed to do, leave the purse at the end of the couch where he had removed it to from her immediate reach, and allow her access to its contents when he turned his back to leave the room? Moving it out of her reach did not extinguish the right to search it because 1) she would have access to it as soon as he left the room and 2) even if he seized it and took it out of the room, he would have to return it at some point and would still not be secure.

We have found no authority under the aegis of the Fourth and Fourteenth Amendments, which is appellant's ground, to compel excluding from the search, authorized by the scope of the warrant, the purse which was at the hand of one of the persons in the premises

when the police executed the warrant. See *United States v. Giwa*, 831 F2d 538, 543 (B) (5th Cir. 1987). *Wood v. State*, 224 Ga. 121 (1) (160 SE2d 368) (1968), holds that the statute meets Fourth Amendment requirements because it does not allow the search of other persons based on their "mere presence" but authorizes only searches of such other persons as will serve one of two express limited purposes.

Until the contents of the purse were disclosed, it posed a possible danger and constituted a possible container of the very items sought. Under the circumstances, it was not within a zone of Mrs. Bonds' privacy excluded from the confines of the warrant just because it apparently, and actually, belonged to a person whose name was not on the warrant and who was at the time occupying her son's residence along with her husband, daughter, and the latter's two friends. She was not visiting her son, because he was not at home. Her status as a visitor does not remove her purse from examination, because there were indicators that she was not an innocent visitor but rather a person involved in the type of criminal activity underlying the warrant. See *Willis v. State*, 122 Ga. App. 455, 457 (177 SE2d 487) (1970). There was a nexus between her and the criminal activity which gave rise to the warrant. See *State v. Hawkins*, 187 Ga. App. 826 (___ SE2d ___) (1988), which, although it is nonbinding, discusses this relationship. Drugs being stored must be brought in, and here the information was that they were periodically being brought in by a visitor then present, with whom it appeared this visitor had come with her purse. Just as in *Willis v. State*, supra, it was possible that this visitor was concealing contraband sought.

This case is not controlled by *Ybarra v. Illinois*, 444 U. S. 85 (100 SC 338, 62 LE2d 238) (1979), because *Ybarra* involved a public tavern rather than a private residence, and it did not involve the search of a container which could contain contraband or weapons. Furthermore, there was no evidence of a connection between the tavern customer there and the targeted bartender, whereas here the female occupant obviously had a personal connection with the resident or with the suspected Linzie Bonds who was present at the same time, in the absence of the resident, or else she was an intruder.

*Judgment affirmed. Deen, P. J., and Banke, P. J., concur. McMurray, P. J., and Carley, J., concur in the judgment only. Birdsong, C. J., Sognier, Pope, and Benham, JJ., dissent.*

BIRDSONG, Chief Judge, dissenting.

I dissent because (a) the majority opinion does not accurately represent certain material facts and implies that the police held certain beliefs contrary to their trial testimony; (b) the search of appellant's purse violated both her state and federal constitutional rights against unreasonable searches; and, (c) the constitutional issues were timely

raised by appellant and require our consideration.

Appellant filed a pretrial suppression motion challenging the issuance of the warrant on grounds including both the violation of the State and Federal Constitutions, and challenging the validity of the search on similar grounds. On appeal appellant enumerates certain errors including that the trial court erred in denying her suppression motion and by overruling her timely objection to the introduction into evidence of items "found" in her purse. In her brief appellant argues the want of an "independent justification" for the search of her purse, which inherently includes the Fourth and Fourteenth Amendment issues of reasonableness of search. These issues are most serious and mandate careful appellate consideration. See, e.g., OCGA § 5-6-48 (f).

The effect of the majority opinion, in view of the actual posture of the facts of this case, is to condone the execution of a general exploratory provision inserted into a search warrant. These types of search warrant provisions are prohibited and void. *Lo-Ji Sales v. New York*, 442 U. S. 319 (99 SC 2319, 60 LE2d 920); *Collins v. State*, 187 Ga. App. 430 (370 SE2d 648); compare with *Willis v. State*, 122 Ga. App. 455 (177 SE2d 487).

Searches of persons not named in a search warrant but found on the premises are illegal absent independent justification for personal search. *Wyatt v. State*, 151 Ga. App. 207 (1) (259 SE2d 199). The general language in the warrant could not standing alone supply independent justification for the search of appellant's property. Id. However, the State could justify the officer's search of appellant's purse provided that it proved the search was conducted in compliance with the statutory provisions of OCGA § 17-5-28, as that statute has been construed to meet existing constitutional requirements. See *Wyatt v. State*, supra at 209.

OCGA § 17-5-28 provides two bases for search. The first statutory basis of OCGA § 17-5-28 (1) is to protect the officer from attack. To meet constitutional requirements, any search conducted on this basis must comply with *Terry v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889). *Terry requires that the officer* who has lawfully detained a citizen must *have and be able to articulate "a reasonable belief that [the citizen] was armed and presently dangerous"* to authorize "a patdown of [his] person for weapons." (Emphasis supplied.) *Ybarra v. Illinois*, 444 U. S. 85, 92 (100 SC 338, 62 LE2d 238); *Terry v. Ohio*, supra at 24, 27 and 30; see *Brown v. State*, 181 Ga. App. 768 (1) (a) (353 SE2d 572). In this case, the facts when viewed in totality conclusively demonstrate that the searching officer did not have or articulate any reasonable belief for concluding that the appellant was armed and dangerous or that she was carrying a weapon in her purse. In fact, Detective Stancil testified at the suppression hearing that al-

though the purse was secured so appellant could not have access to it, he "didn't know if there was any weapons or anything" in it. Additionally, as a totally separate issue, the record is silent as to the construction of the purse, thus it cannot be ascertained whether or not it could have been subjected to an effective "patdown." However, the record discloses that Detective Stancil did not attempt to "patdown" the purse in any manner prior to subjecting it to a "full" search. Thus, he did not discover any hard object or other item by the "patdown" process, which might have provided a basis under *Terry* for a further intrusion therein (assuming the "patdown" requirement of reasonable belief had first been met in this case, which it had not).

The second statutory basis of an OCGA § 17-5-28 (2) search is "[t]o prevent the disposal or concealment of any . . . things particularly described in the search warrant." The following facts are relevant: Detective Stancil, the searching officer, testified at the suppression hearing that he searched the purse "to see if there was any contraband drugs being stored in [the] pocketbook," because "[we search anything and everything in the location when we're there. . . ." At no point in his testimony did Detective Stancil even express any articulable suspicion, let alone any basis for *probable cause*, that the appellant's purse contained drugs or other contraband. Appellant had been under Detective Stancil's *constant observation* since the police kicked down the door to the residence, and she had done nothing suspicious. Moreover, the police were unaware of the appellant's identity until after the search of her purse; and, the record discloses that the police did not voice any suspicion that she was in any way connected with anyone named in the warrant until *after* the purse search was completed. The police testified further that appellant was not arrested until after the purse search; moreover, no probable cause existed for her arrest prior to the purse search.

A search conducted under the authority of OCGA § 17-5-28 (2) must be based on probable cause; otherwise, the statute would be subject to serious constitutional challenge. *Ybarra v. Illinois*, supra at 94-96 and 96 n. 10 and 11. Clearly, the facts of this case establish that OCGA § 17-5-28 cannot legitimize the search of appellant's purse, and interestingly the majority avoids effectively discussing its provisions. However, to the extent that the majority opinion attempts to justify the purse search on the basis of *Terry*, it is also in error. For reasons above discussed, the facts of this case did not justify a "full" search of appellant's purse for weapons. Secondly, *Terry* does not provide authority to conduct a "full" search of either a person or his property or to "aid the evidence-gathering function of the search warrant" in the absence of "probable cause." *Ybarra v. Illinois,* supra at 94-96; *Scott v. State*, 253 Ga. 147, 149 (317 SE2d 830); see generally Daniel, Ga. Criminal Trial Practice § 4-16.

Under the facts of this case, the police even lacked any articulable suspicion or belief that appellant was in the possession of drugs. Thus, the state of the evidence does not come close to establishing the necessary "probable cause" required by OCGA § 17-5-28 (2) and *Terry/Ybarra* to justify a "full" search of appellant's purse for possible drugs. Accordingly, the conduct of the police under the facts of this case violated appellant's rights both under the Fourteenth and Fourth Amendment of the United States Constitution and under Art. I, Sec. I, Par. XIII of the Georgia Constitution.

The majority ultimately attempts to justify this search on the basis of necessity. The mere fact a weapon was found in the purse as a result of illegal police conduct does not provide a legal basis for rendering an illegal search legal. *Wong Sun v. United States*, 371 U. S. 471, 484 (83 SC 407, 9 LE2d 441); *Willis v. State*, supra at 457. The police in this case clearly searched appellant's purse only as a matter of police routine because the warrant contained a general exploratory search provision. Not a single officer testified at trial or at the suppression hearing that they perceived themselves in any danger from appellant, and their conduct towards her at the scene is totally consistent with such a belief. *Terry* holds that in determining whether the officer acted reasonably in the circumstances, due weight must be given to the specific reasonable inferences which he is entitled to draw from the facts "in light of his experience." *Terry v. Ohio*, supra at 27. This test cuts both ways! When the officers draw specific reasonable inferences, based on their professional experience, that an appellant poses no danger to them, we should respect those inferences and not supply after-the-fact rationalizations to justify conduct motivated by entirely different reasons. Further, if the police wanted to ensure appellant did not gain access to her purse while they were still on the premises, this could have been arranged easily without *violating* appellant's constitutional rights. All that had to be done was to usher everyone, both those to be arrested and those to be released, outside the premises, while leaving the purse inside; and, then not allowing anyone to go back into the premises until after the police drove away in obvious safety with those to be arrested. This procedure would have protected the police while leaving the appellant behind, constitutional rights intact, to subsequently retrieve her purse. Moreover, the dissent does not claim that given these same circumstances, the police could not on another occasion articulate a reasonable belief for the immediate patdown of appellant and her purse. We only note that these particular officers in light of their experience did not have such a belief or conduct such a patdown procedure.

Finally, I am compelled to comment on certain factual inferences and analogies contained in the majority opinion. The majority opinion repeatedly attempts to connect the appellant with her husband,

Linzie Bonds, in such a manner as to imply that the police conducting the search actually held, at least, a reasonable belief that she had some connection to her husband and the drug operation *before* they searched her purse. *The trial record* not only does not support this inference, it *shows that the police neither knew who the appellant was nor harbored any belief as to how she arrived at the premises at least until after her purse was searched* and her driver's license found. In fact, the police testified to their lack of knowledge of her identity before the search, and to their lack of any prior information connecting her to any drug activity. They did not testify that they either suspected or had probable cause to believe her purse contained drugs merely because she and teenage girls were found in the same house as Linzie Bonds. The majority further states that appellant "was not visiting her son because he was not at home." Unrefuted evidence of record establishes that appellant was visiting the premises. When appellant first arrived at her son's house, he was at home; subsequently he left the premises to go to school and just happened to be absent when the police arrived. However, even during his absence his co-resident, Raymond Mendel, was present in the two-bedroom premises. As far as the police were concerned, appellant and the teenage girls could have been lawfully visiting the co-tenant. Moreover, the police testified they did not know who appellant was, and during their candid testimony they did not speculate as to the reason for her presence on the premises. Thus, the majority's conclusion that appellant was not a visitor is not supported by the operative facts. The majority also attempts to draw an analogy between this search and the search of a purse of a person entering a courthouse or airport departure area. This argument is totally devoid of merit in my opinion. First, there exists certain unique security problems in courthouses and airports that warrant extraordinary precautions in the interest of public safety. See *McSweeney v. State*, 183 Ga. App. 1, 2 (358 SE2d 465). The search here was conducted in a private dwelling and pursuant to general exploratory language in a search warrant. Secondly, people entering airport departure areas and courthouses may avoid purse searches merely by electing not to use the facilities offered at that time. In this case, appellant was given no equal right of election, and gave no consent to the search of her purse.

This case should be reversed. See generally *Ybarra v. Illinois*, supra; *Wyatt v. State*, supra; *Bundy v. State*, 168 Ga. App. 90, 91 (308 SE2d 213); *Childers v. State*, 158 Ga. App. 613, 615 (281 SE2d 349).

I respectfully dissent. I am authorized to state that Judge Sognier, Judge Pope and Judge Benham join in this dissent.

DECIDED JULY 15, 1988 —
REHEARING DENIED JULY 29, 1988

*Ralph J. Hunstein*, for appellant.
*Robert E. Wilson*, District Attorney, *John H. Petrey, Eleni A. Pryles*, Assistant District Attorneys, for appellee.