A06A2170. NORTON v. THE STATE.
(643 SE2d 278)

SMITH, Presiding Judge.

A Gordon County jury found Miranda Norton guilty of trafficking in methamphetamine, possession of methamphetamine with intent to distribute, and possession of methylenedioxymethamphetamine ("Ecstasy") with intent to distribute. On appeal, Norton contends that the trial court erred in denying her motion to suppress evidence seized from her by law enforcement officers during their execution of a search warrant on the premises of Norton's aunt. We agree and reverse because (1) a search of Norton's person was not justified to protect an officer or to prevent the disposal or concealment of evidence sought in the warrant; (2) the officers did not have probable

cause for a warrantless search of her person; and (3) the State failed to establish that the evidence seized from her would have been inevitably discovered.

When considering whether a trial court erred by denying a motion to suppress

> this Court construes the evidence in favor of the trial court's ruling, and we review de novo the trial court's application of the law to undisputed facts. Additionally, we must defer to the trial court's determination on the credibility of witnesses, and the trial court's ruling on disputed facts must be accepted unless it is clearly erroneous. Moreover, in reviewing the denial of a motion to suppress, we consider all the evidence of record, including evidence introduced at trial.

(Citation and footnote omitted.) *Jackson v. State*, 280 Ga. App. 716-717 (634 SE2d 846) (2006).

So viewed, the evidence shows that members of the Gordon County drug task force followed a confidential informant and a third party to a house where the third party bought methamphetamine from a 16-year-old male. A task force member applied for and obtained a search warrant for the premises where the methamphetamine was purchased.[1] Later that evening, the task force executed the warrant on the premises, which was the residence of Sharon Norton and her son, C. R. Appellant Miranda Norton, Sharon Norton's niece, was not named in the warrant, did not reside with her aunt, and had not previously come to the attention of investigating officers.

When the officers first arrived, Miranda Norton was standing by a truck in the driveway and talking with her friend, Michael Blakey. Sharon Norton and C. R. were in the house. At least two other people were in the house, and several more individuals were standing outside in the front yard. The officers detained everyone in and around the premises, including Miranda Norton, and patted them down for weapons. No contraband or weapons were seized from Miranda Norton at that time. After the premises were secure, the task force members and a drug detection dog conducted a search of the home. Officers found a bag of marijuana in C. R.'s pocket, several plastic bags of methamphetamine under C. R.'s bed, and four blocks of marijuana and a safe in Sharon Norton's closet. In the living room, officers seized a book next to a computer on speculation that the book,

---

[1] The warrant did not authorize law enforcement officers to search all persons on the premises.

which contained a list of names and numbers, was a drug record. An officer also found a photograph showing Miranda Norton seated at the computer.

The officers opened the locked safe with a hammer. Inside was a set of scales, Ecstasy pills, and a large quantity of crystal methamphetamine. The task force commander then ordered detectives to "retrieve" keys from Sharon Norton, C. R., Miranda Norton, Blakey, and "a couple more individuals there." The commander confirmed that he saw a detective take Miranda Norton's keys.[2] After he tried several sets of keys, a key on Miranda Norton's key chain fit the safe and opened the lock. Miranda Norton was then arrested.

1. Miranda Norton contends that the trial court erred in denying her motion to suppress because her detention and subsequent search were unlawful. See OCGA § 17-5-30 (a) (1). We agree. Absent independent justification for a personal search, "[s]earches of persons not named in a search warrant but found on the premises to be searched when the warrant is executed are illegal." (Citation omitted.) *Bundy v. State*, 168 Ga. App. 90 (308 SE2d 213) (1983). Accord *Willis v. State*, 122 Ga. App. 455, 459 (177 SE2d 487) (1970). OCGA § 17-5-28 provides two grounds for justifying the search of persons found on the premises during execution of a warrant:

> In the execution of the search warrant the officer executing the same may reasonably detain or search any person in the place at the time: (1) [t]o protect himself from attack; or (2) [t]o prevent the disposal or concealment of any instruments, articles, or things particularly described in the search warrant.

Further, "this Code section describes the maximum extent to which the particularity of description required by the Fourth Amendment may be encroached upon by the practical necessities of the search environment." (Citation and punctuation omitted.) *Steward v. State*, 237 Ga. App. 672, 674 (516 SE2d 534) (1999).

In order to justify a search under OCGA § 17-5-28 (1), "the officer must be able to articulate specific facts that would support a reasonable belief or suspicion that the person to be searched was armed and dangerous." (Citation and footnote omitted.) *State v. Holmes*, 240 Ga. App. 332, 333 (525 SE2d 698) (1999). Here, officers failed to articulate any specific facts showing that they reasonably believed or suspected that Miranda Norton was armed. She was initially detained and patted down for weapons along with everyone else simply because she was on the premises. See id. (where officers could not articulate facts

---

[2] The State does not contend that Miranda Norton consented to surrender her keys.

supporting reasonable belief that defendant was armed, defendant's search pursuant to officers' general policy of conducting a weapons pat-down search when a warrant was executed was not justified under OCGA § 17-5-28 (1)). Even if Miranda Norton's initial detention and pat-down were permissible as a precaution to protect officers from harm while they entered premises where they suspected drugs were being sold,[3] the officers' later search of Miranda Norton in order to retrieve her keys had no relation to their safety and cannot be justified by OCGA § 17-5-28 (1).

The State can justify the search under OCGA § 17-5-28 (2) only if Miranda Norton "had been in a position to assist in the disposal or concealment of the drugs sought by the warrant, or if [she] had attempted flight from inside the house subject to the warrant." (Citations and footnotes omitted.) *Holmes, supra,* 240 Ga. App. at 333. See also *Steward, supra,* 237 Ga. App. at 674 (there must be a connection between the person searched and the criminal activity which leads to logical belief that the person possesses a targeted item). There is no evidence that Miranda Norton attempted to flee from the officers. Further, the officers first saw her outside the home, and they directed her to go inside where she remained under their supervision. She was never in any position to dispose of or conceal any items sought by the warrant. See *Mercer v. State,* 251 Ga. App. 465, 468 (2) (554 SE2d 732) (2001) (search and detention of defendants who were found by police standing outside of buildings to be searched under the warrant and not near the only person named in warrant was not justified under OCGA § 17-5-28 (2)). Compare *State v. Hawkins,* 187 Ga. App. at 826-828 (1) (371 SE2d 668) (1988) (visitor was present in living room of residence to be searched when officers entered, and under the circumstances officers were authorized to search visitor for objects stated in the search warrant). It follows that Miranda Norton's detention and search cannot be justified under OCGA § 17-5-28 (2).

2. Having found that OCGA § 17-5-28 does not justify the search, we must now consider the State's argument that the search was valid because it was conducted after Miranda Norton's lawful arrest. See *Travis v. State,* 192 Ga. App. 695, 696 (385 SE2d 779) (1989). We find no merit in this argument because the officers did not lawfully arrest Miranda Norton.

The presence of contraband on C. R.'s person and in his bedroom and in Sharon Norton's bedroom logically connected the drugs to those residents, but not to Miranda Norton, who was a visitor stand-

---

[3] See *Condon v. State,* 203 Ga. App. 163 (416 SE2d 802) (1992), *State v. Hawkins,* 187 Ga. App. 826, 828 (2) (371 SE2d 668) (1988) (physical precedent only on other grounds).

ing outside the house when the officers arrived. See, e.g., *Blount v. State*, 181 Ga. App. 330, 332 (2) (352 SE2d 220) (1986) (being in the vicinity of contraband does not, without more, establish possession). Further, the officers had no information connecting Miranda Norton to the previous drug transaction at the residence. While the State characterizes the officers' discovery of Miranda Norton's photograph as crucial evidence providing a nexus between Miranda Norton and the premises, it shows nothing more incriminating than that she had at some point in the past been inside her aunt's house. The officers therefore were not in possession of facts and circumstances "sufficient to warrant a prudent man in believing that the accused had committed or was committing an offense." (Citations omitted.) *Callaway v. State*, 257 Ga. 12, 14 (2) (354 SE2d 118) (1987). Indeed, the task force commander testified that he did not consider Miranda Norton to be under arrest when her keys were initially retrieved. That her keys ultimately connected Miranda Norton to the drugs found in the safe cannot form the basis for the search of her person after the fact. "[I]f one is unlawfully searched, the fact that incriminatory matter is found on [her] will not render the search legal." *Willis*, supra, 122 Ga. App. at 457.

3. The State contends that even if the officers unlawfully seized the key to the safe, the key would have been inevitably discovered by lawful means. Therefore, the State argues, the trial court properly denied the motion to suppress based under the inevitable discovery doctrine. "Under the inevitable discovery doctrine, if the State can prove by a preponderance of the evidence that evidence derived from police error or illegality would have been ultimately or inevitably discovered by lawful means, then the evidence is not suppressed as fruit of the poisonous tree." (Citation and footnote omitted.) *Taylor v. State*, 274 Ga. 269, 274 (3) (553 SE2d 598) (2001). In order for the inevitable discovery doctrine to apply "there must be a reasonable probability that the evidence in question would have been discovered by lawful means, and the prosecution must demonstrate that the lawful means which made discovery inevitable were possessed by the police and were being actively pursued prior to the occurrence of the illegal conduct." (Citations, punctuation and footnote omitted.) Id. at 274-275 (3). Further, the application of the doctrine "involves no speculative elements but focuses on demonstrated historical facts capable of ready verification or impeachment." (Citation, punctuation and footnote omitted.) Id. at 274 (3).

Here, the State failed to show that lawful means of investigation were available to the officers and were being actively pursued before the illegal seizure that would have inevitably led to the discovery of the key. Arguably, evidence against Miranda Norton would have developed in the normal course of the investigation out of statements

taken by officers from Sharon Norton and C. R. later that evening.[4] But law enforcement officers could not have held Miranda Norton indefinitely on the possibility that they would discover evidence against her at some time in the future. Other visitors to the residence were allowed to leave after being questioned. Whether the key to the safe would have remained in Miranda Norton's possession if she left the premises and was arrested later is necessarily a matter of speculation. Accordingly, the record cannot support a finding that the key to the safe would have been inevitably discovered. See, e.g., *Taylor*, supra, 274 Ga. at 275 (3) ("evidence was too speculative to support the trial court's finding that the gun would have been inevitably discovered").

Because the trial court erred in denying Miranda Norton's motion to suppress, we must reverse and remand this case to the trial court for a new trial. See *Buchanan v. State*, 264 Ga. App. 148, 148-150 (1) (589 SE2d 876) (2003) (trial court's erroneous denial of defendant's motions to suppress and in limine required reversal and remand of case for new trial).

*Judgment reversed and case remanded. Ruffin and Phipps, JJ., concur.*

DECIDED FEBRUARY 28, 2007.

*Rebecca B. Paris*, for appellant.
*T. Joseph Campbell, District Attorney, Erik J. Pirozzi, Assistant District Attorney*, for appellee.

---

[4] C. R. testified that he told the interviewing officer "basically" what he told the jury, which was that he got his methamphetamine from Miranda Norton.