**FIRST DIVISION**
**BARNES, P. J.,**
**MERCIER and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**June 4, 2019**

# In the Court of Appeals of Georgia

A19A0079. DAY v. THE STATE.

BROWN, Judge.

Brea Day appeals her conviction for possession of marijuana less than one ounce. In her sole enumeration of error, Day argues that the trial court erred in denying her motion to suppress evidence seized during a warrantless search of her wallet. For the reasons set forth below, we affirm.

When "considering a trial court's denial of a motion to suppress, we construe the evidence in favor of the court's ruling, and we review de novo the trial court's application of the law to undisputed facts." (Citation, footnote, and punctuation omitted.) *Whitfield v. State*, 337 Ga. App. 167, 169 (786 SE2d 547) (2016). So viewed, the evidence presented at the suppression hearing shows that Day was on

felony probation at the time of the search[1] and had reported to a Georgia Department of Community Supervision (GDCS) facility for intake and a probation appointment. Upon entering the facility, Day was instructed to walk through a metal detector and to place her personal belongings onto a table before undergoing a pat-down search. The probation officer testified that probationers are required to go through this process before meeting with probation personnel for safety reasons. Notices posted on the walls inform those entering the facility that anything on the person is subject to search. During the probation officer's initial search of Day's personal items, the officer found "a leafy substance" inside her purse. At this point Day stated, "you don't want to go in there," referring to her wallet. A subsequent search of Day's wallet revealed a "clear baggy" containing a green leafy substance later confirmed to be marijuana.

After a hearing, the trial court denied Day's motion to suppress. In its order, the trial court found that while Day, as a probationer, has the right to be free from unreasonable searches and seizures, at the time of the search, Day "should not have reasonably expected the level of privacy that she would have at home." Instead,

---

[1] It is unclear from the record whether Day agreed to a Fourth Amendment waiver as a special condition of her probation.

2

according to the trial court, Day was at a state probation office, "a place where a person and society would reasonably expect to be subjected to a search." And "[t]he Fourth Amendment protects against *unreasonable* searches and seizures." (Emphasis in original.)

"The Fourth Amendment [to the United States Constitution] proscribes all unreasonable searches and seizures, and searches conducted without prior judicial approval are per se unreasonable under the Fourth Amendment, subject to specifically established and well-delineated exceptions." (Citation omitted.) *Teal v. State*, 282 Ga. 319, 322-323 (2) (647 SE2d 15) (2007). "[C]ases . . . sustain[ing] limited searches of persons seeking to enter sensitive facilities recognize an exception to the general requirement of the [F]ourth [A]mendment that searches are proper only if conducted pursuant to a lawful warrant.[Cits.]" *McMorris v. Alioto*, 567 F2d 897, 899 (9th Cir. 1978). Such "limited searches at sensitive facilities" fall under the category of "administrative searches," or the "special needs" exception to the Fourth Amendment's warrant and probable cause requirements. See id. See also *Skinner v. R. Labor Execs. Assn.*, 489 U. S. 602, 620 (III) (A) (109 SCt 1402, 103 LE2d 639) (1989) (recognizing exception to warrant and probable cause requirements "when special needs, beyond the normal need for law enforcement, make the warrant and

3

probable-cause requirement impracticable") (citations and punctuation omitted). Airports, governmental buildings, and detention facilities have all been considered "sensitive facilities" in this context. See *United States v. Prevo*, 435 F3d 1343, 1345-1349 (11th Cir. 2006) (work release center/detention facility); *McMorris*, 567 F2d at 899 (city hall and courthouse); *McSweeney v. State*, 183 Ga. App. 1, 2-3 (1) (358 SE2d 465) (1987) (airport). "When faced with such special needs, we have not hesitated to balance the governmental and privacy interests to assess the practicality of the warrant and probable-cause requirements in the particular context." *Skinner*, 489 U. S. at 619 (III) (A). This "reasonableness inquiry is a balancing test that weighs the need for the search, including its likely effectiveness in averting potential harm to the public, against the degree and nature of the intrusion into a citizen's privacy interests." (Citations omitted.) *Prevo*, 435 F3d at 1345.

It is well-settled that government has a compelling interest in protecting the public and its employees inside government buildings. See *United States v. Lamson*, 993 F2d 1540 (II) (B) (4th Cir. 1993) (federal courthouse); *Klarfeld v. United States*, 944 F2d 583, 586 (9th Cir. 1991) (courthouse); *McMorris*, 567 F2d at 900. The Supreme Court of the Unites States has "reiterate[d] . . . that where the risk to public safety is substantial and real, blanket suspicionless searches calibrated to the risk may

4

rank as 'reasonable'— for example, searches now routine at airports and at entrances to courts and other official buildings." (Citation omitted.) *Chandler v. Miller*, 520 U. S. 305, 323 (III) (117 SCt 1295, 137 LE2d 513) (1997). As the probation officer testified during the suppression hearing, each person arriving for a probation or parole appointment is required to walk through a metal detector, empty his or her pockets, place his or her personal belongings on a table, and undergo a pat-down search. This is standard procedure. This protocol serves the purpose of keeping contraband such as "weapons, box cutter[s], matches" out of the facility and protecting everyone involved from a real danger of violence. We conclude that this is a legitimate governmental interest justifying the use of the limited search procedure in this case, especially given the nature of this facility.[2]

While we recognize the government's legitimate interest at stake, we must also consider the privacy interest of the person who enters the governmental facility. Courts have found that by presenting oneself at a sensitive facility's security checkpoint, one implicitly consents to the screening and search of one's belongings. See *United States v. Herzbrun*, 723 F2d 773, 776 (II) (A) (11th Cir. 1984) ("those

---

[2] The Georgia Department of Community Supervision is a state agency tasked with supervising convicted offenders on parole and felony probation. See OCGA § 42-3-3.

presenting themselves at a security checkpoint thereby consent automatically to a search, and may not revoke that consent if the authorities elect to conduct a search"); *McMorris*, 567 F2d at 901 (person entering courthouse consents to limited regulatory search, but free to leave); *McSweeney*, 183 Ga. App. at 3 (1) (passenger who presents himself to an airport security checkpoint has consented to the screening of his luggage and his person). This is especially true where multiple signs clearly warn the person of this trade-off. See *Prevo*, 435 F3d at 1348. Thus, the amount of privacy Day could reasonably expect upon entering the GDCS facility is diminished by the presence of signs warning those reporting for a parole or probation appointment that they and their personal belongings are subject to search. See id.

Moreover, Day was not just an ordinary citizen entering the facility — she was a convicted offender reporting to a probation appointment. While the "right to be free from unreasonable searches and seizures extends to all persons, including probationers[,] [a] defendant's status as a probationer . . . is a factor to be considered in determining whether a search and seizure by a probation officer is unreasonable." *Hunter v. State*, 139 Ga. App. 676, 678 (2) (229 SE2d 505) (1976). In that vein, the Supreme Court of Georgia has previously found that "the supervision of probationers that is necessary to operate a probation system presents special needs that may justify

6

departures from the usual warrant and probable-cause requirements." (Citations, footnote, and punctuation omitted.) *Whitfield*, 337 Ga. App. at 170, citing *Fox v. State*, 272 Ga. 163, 165 (2) (527 SE2d 847) (2000). See also *Hunter*, 139 Ga. App. at 678 (2). While the State has failed to show that Day agreed to a limitation on her Fourth Amendment rights as part of her probation, her probationary status alone is yet another factor supporting the conclusion that Day had a diminished expectation of privacy in the contents of her purse when she arrived at the GDCS facility for an appointment with her probation officer. Under these circumstances, the search of Day's purse and wallet was not unreasonable and did not violate the Fourth

Amendment.[3] Accordingly, the trial court did not err in denying her motion to suppress.

*Judgment affirmed. Mercier, J., concurs. Barnes, P.J., concurs specially.*

---

[3] We agree with the special concurrence's assertion that "a search justified under the 'administrative search' exception to the Fourth Amendment is not limitless and must nonetheless be constitutionally reasonable." As explained, supra, we utilize the balancing test in administrative search cases to determine the reasonableness of the search. We, however, cannot agree with the special concurrence's alternative analysis. The special concurrence appears to state that Day's implicit consent did not extend to the contents of her wallet. However, the administrative search exception we apply in this case is premised on Day's implied consent to search upon entering the building. Thus, to the extent the special concurrence concludes that Day's implicit consent did not extend to the contents of her wallet, the concurrence also necessarily concludes that the administrative search exception does not apply to the search of the wallet. If this is so, then the special concurrence essentially argues that "reasonable suspicion of criminal wrongdoing" alone justifies a warrantless search of the wallet. Such reasoning is inconsistent with well-established Fourth Amendment law, specifically that "no amount of probable cause [— much less reasonable suspicion —] can justify a warrantless search absent an exception to the warrant requirement." (Footnote omitted.) *Caffee v. State*, 303 Ga. 557, 562 (2) (a) (814 SE2d 386) (2018), citing *Coolidge v. New Hampshire*, 403 U. S. 443, 468 (91 SCt 2022, 29 LE2d 564) (1971).

8

A19A0079. DAY v. THE STATE.

BARNES, Presiding Judge, concurring specially.

Although I concur with the result reached by the majority in this opinion and agree that the trial court did not err in denying appellant's motion to suppress, I write separately only to emphasize that a search justified under the "administrative search" exception to the Fourth Amendment is not limitless and must nonetheless be constitutionally reasonable. "The Fourth Amendment permits the warrantless search of 'closely regulated' businesses; 'special needs' cases such as schools, employment, and probation; and 'checkpoint' searches such as airport screenings under the administrative search doctrine." *Corbett v. TSA*, 767 F3d 1171, 1180 (11th Cir. 2014).

However, a limited warrantless search of a person under this exception is only lawful if "conducted as part of a general regulatory scheme in furtherance of an administrative purpose, rather than as part of a criminal investigation to secure evidence of crime." *United States v. Davis*, 482 F2d 893, 908 (9th Cir. 1973). And, "to pass constitutional muster, an administrative search must meet the Fourth Amendment's standard of reasonableness." Id. at 910. To that end, "[t]he search must be limited and no more intrusive than necessary to protect against the danger to be avoided, but nevertheless reasonably effective to discover the materials sought." *McMorris v. Alioto*, 567 F2d 897, 899 (9th Cir. 1978). In *Griffin v. Wisconsin*, 483 U.S. 868, 874 (97 LE2d 709, 107 SCt 3164) (1987), the Court found that "special needs" associated with the probation and parole system may "justify departures from the usual warrant and probable-cause requirements," but also held that "the permissible impingement on a [probationer's] privacy is not unlimited." Id. at 875.

However, I agree that under the facts of this case the warrantless search of the appellant's wallet was justified because the probation officer saw "a leafy substance in the personal items that [the appellant] had placed on the wooden countertop," and, the appellant, then, referencing her wallet that was located nearby, told the officer "you don't want to go in there." Accordingly, in this case, I would find that the

2

administrative exception in conjunction with reasonable suspicion of criminal wrongdoing justified the more extensive search of the appellant's wallet.[1] See *Chandler v. Miller*, 520 U.S. 305, 323 (117 SCt 1295, 137 LE2d 513) (1997) ("where the risk to public safety is substantial and real, blanket suspicionless searches calibrated to the risk may rank as "reasonable" for example, searches now routine at airports and at entrances to courts and other official buildings. But where . . . public safety is not genuinely in jeopardy, the Fourth Amendment precludes the suspicionless search, no matter how conveniently arranged.") (citation and punctuation omitted).

---

[1] As pointed out by the majority, there is no evidence in the record that Day waived her Fourth Amendment protections as a condition of probation, however even in those circumstances we have held that a search pursuant to a special condition of probation must be prompted by reasonable suspicion of criminal activity. *Rocco v. State*, 267 Ga. App. 900, 903 (2) (601 SE2d 189) (2004).