**Donald P. HUNTER, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. 84–216.**

Supreme Court of Wyoming.

Aug. 14, 1985.

---

Leonard D. Munker, State Public Defender, Martin J. McClain, Appellate Counsel, Cheyenne and K. Leslie Delk, Asst. Public Defender, Laramie, for appellant.

A.G. McClintock, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., John W. Renneisen, Senior Asst. Atty. Gen., and Karen Maurer, Sp. Asst. Atty. Gen., for appellee.

Before THOMAS, C.J., and ROSE, ROONEY, BROWN and CARDINE, JJ.

ROONEY, Justice.

Appellant was convicted after a trial to the court of a violation of § 6–3–403(a), W.S.1977, (June 1983 Pamphlet), and sentenced to one to three years in the Wyoming State Penitentiary.

Appellant's issues on appeal concern the warrantless search and seizure of the car and appellant's personal effects found within the car, and also the sufficiency of the evidence as to concealment.

We affirm.

## FACTS

In the early morning hours of May 6, 1984 a police officer saw appellant driving a new model Cadillac Seville with Michigan license plates in the downtown area of Laramie. The officer ran a NCIC check on the car. Before the report came back, appellant flagged down the officer to inquire where he could purchase motor oil at that hour. The officer gave appellant a few suggestions, and appellant drove off. The report eventually came back that the car appellant was driving was stolen, and the officer put out an alert to watch for the vehicle. Appellant was arrested off the interstate at the summit rest area a few miles east of Laramie, and the car was impounded.

When the police lieutenant came on duty the next morning, he reviewed the report on appellant. He was told that Michigan would probably not extradite appellant, but that the sheriff's office was requested to keep appellant in custody until official notification to that effect was received. The officer then telephoned the owner of the Cadillac, Ms. Martin. He informed her of the location of the car and was in turn advised that several personal belongings of Ms. Martin had been in the car at the time it was stolen.

The officer obtained the keys to the vehicle from the sheriff's office and searched the car to see if any of Ms. Martin's things were still there. None of Ms. Martin's effects were recovered, but several containers were found, containing many items commonly used in the falsification of car titles. Prior to trial, and again at trial, appellant moved to have these items excluded from trial on the basis that either the search was illegal or the evidence had no probative value. The motions were denied, the judge ruling that appellant had no standing to object to the search of a stolen car. The items were admitted to prove knowledge that the car was stolen.

## SEARCH AND SEIZURE

■ Appellant contends that the search of the Cadillac violated his rights, both under the United States Constitution and the Wyoming Constitution. It is recognized that warrantless searches and seizures are unreasonable per se under both the Fourth Amendment to the United States Constitution and Art. 1, § 4, of the Wyoming Constitution. *Ortega v. State*, Wyo., 669 P.2d 935 (1983). This rule is subject only to a few specifically established and well-delineated exceptions. *Kish v. State*, Wyo., 642 P.2d 453, 455 (1982); *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967). The search and/or seizure of an automobile upon probable cause is one of the recognized exceptions, *Ortega v. State*, supra; *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543, 39 A.L.R. 790 (1925).

■ The general rule as to the warrantless search of automobiles, for the purposes of the Fourth Amendment to the Constitution of the United States, was stated in *Carroll v. United States*, supra. There the Court held that the warrantless search of an automobile which was stopped by police who had probable cause to believe the vehicle contained contraband was not unreasonable. In the case at bar, the police knew that the car was stolen. Clearly it was proper for the police to search and seize a vehicle which it knew to be stolen. The car itself was contraband, and it very possibly could also contain contraband, i.e., the personal belongings which were stolen along with the car.

Appellant then argues that even if the search and seizure of the car itself were proper, the search and seizure of his belongings, in closed containers, were not proper. Appellee, in turn, argues that the search and seizure of the closed containers were proper upon any of three bases. First, that appellant consented to the search by turning over the car keys; second, that the officers were merely looking for the items which belonged to Ms. Martin, the owner of the car, and this necessitated opening the containers; and third, that the search was for the purposes of completing an inventory of a lawfully impounded car. Appellant finds fault with each of these three bases. He alleges that the consent was not voluntary because he turned over the car keys after being told that Michigan was not interested in extraditing him and that, therefore, he was to be released from custody shortly. He refers us to the testimony of the officer who searched the car wherein he stated that none of the closed containers resembled any of Ms. Martin's description of her property and that, therefore, he assumed the containers to contain the personal property of appellant. Lastly, he contends that the caretaking function of an inventory includes removing valuables from a car for safekeeping, but does not include searching through closed containers which can be stored safely within police headquarters without ever being opened.

In *United States v. Ross*, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982), the Supreme Court considered the permissible scope of a search such as in the *Carroll* case. Ross involved the search of a car which was stopped after a tip that the car contained narcotics. The informant in the case had previously proven to be reliable, and the information given matched that observed by the officers. The officers stopped the car, and searched it. They found a bullet on the front seat, a pistol in the glove compartment and a closed brown paper bag in the trunk. Upon opening the paper bag, a number of glassine bags containing a white powder were discovered. The car was then removed to police headquarters, where another search was performed. A zippered red leather pouch containing $3,200 in cash was found in the trunk. The white powder was later determined to be heroin. There was no question but what the officers could stop and search the car, including its trunk, because the requisite probable cause was evident. The question arose as to the search of the paper bag and leather pouch.

The Court, in *Ross*, noted the ruling of *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), that the general principle was that closed packages and containers may not be searched without a warrant.

" * * * In sum, the Court in Chadwick declined to extend the rationale of the 'automobile exception' to permit a warrantless search of any movable container in a public place." (Footnote omitted.) *United States v. Ross*, supra, 102 S.Ct. at 2166.

However, Chadwick can be distinguished from *Ross* because it involved suspicion directed only at a footlocker, which was at some point placed in a car, unlike *Ross* where the suspicion was that the car contained narcotics within it. Thus, in *Ross*, the officers had probable cause to search the entire vehicle.

In reaching its result in *Ross*, the Court, noted that:

" * * * Indeed, prior to the decisions in Chadwick and Sanders, courts routinely had held that containers and packages found during a legitimate warrantless search of an automobile also could be searched without a warrant." (Footnote omitted.) 102 S.Ct. at 2170.

Further, the Court indicated that the practical consequences of the *Carroll* decision would be nullified if the permissible scope of such a search did not include containers found within the vehicle.

" * * * Contraband goods rarely are strewn across the trunk or floor of a car; since by their very nature such goods must be withheld from public view, they rarely can be placed in an automobile unless they are enclosed within some

form of container. * * * " (Footnote omitted.) 102 S.Ct. at 2170.

 Finally, the Court determined that the scope of a warrantless search of a vehicle is not defined by the nature of the container in which the contraband is held. It is instead defined by the object of the search and the places in which there is probable cause to believe it may be found.

"The exception recognized in Carroll is unquestionably one that is 'specifically established and well delineated.' We hold that the scope of the warrantless search authorized by that exception is no broader and no narrower than a magistrate could legitimately authorize by warrant. If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." 102 S.Ct. at 2173.

In the case at bar, there was probable cause to believe that the car was stolen, and that it could contain stolen personal property of the vehicle's owner. The car also could have contained evidence which tended to show that a crime had been committed or which tended to show that a particular person had committed a crime.

Rule 40, W.R.Cr.P., provides in part:

"(b) *Grounds for issuance.*—A warrant may be issued under this rule to search and seize any property

"(1) Stolen or embezzled in violation of law; or

 * \* \* \* \* \**

"(4) When the property or things to be seized consist of any item, or constitute any evidence which tends to show a crime has been committed, or tends to show that a particular person has committed a crime."

If a warrant had been issued, it certainly would have directed the officers to search for Ms. Martin's personal belongings which were stolen along with the car. Lieutenant Puls testified on cross-examination that he believed that the items he found in the vehicle belonged to the appellant, and that

none of them resembled anything Ms. Martin had described to him. However, even though the officer might not have said so, there was no way to know whether or not Ms. Martin's belongings had been put in with the items that were believed to belong to Mr. Hunter, until they were opened. Once lawfully opened, the contents which did belong to Mr. Hunter were in plain view and subject to search.

 Because there was probable cause to search the car and any closed containers found within the car, the search and seizure were not unreasonable, under either the Fourth Amendment of the United States Constitution or Art. 1, § 4 of the Wyoming Constitution. Thus, the proceeds of the search and seizure were properly admitted into court.

## CONCEALMENT

 Appellant's last issue is whether there is sufficient evidence to support the judge's finding that appellant concealed stolen property in the state of Wyoming. In making this determination, we view the evidence in the light most favorable to the prevailing party below, i.e., the State. *Cutbirth v. State*, Wyo., 663 P.2d 888 (1983).

Concealment is generally defined to mean "to prevent disclosure or recognition of" or "to place out of sight." Webster's New Collegiate Dictionary (1979). Appellant contends that there was no evidence that he concealed the vehicle in question as he drove it through downtown Laramie and flagged down a policeman; the license plate had not been changed, and no other alterations had been made to disguise the car or hide its whereabouts.

 When used in a legal sense, the word concealment means more than to place out of sight or to prevent recognition. It means to place out of sight of the owner, or to prevent recognition by the owner.

"The word 'conceals' in the statute was not used in a technical sense but includes all acts done which render the discovery or identification of property more diffi-

cult. *State v. Ward,* 49 Conn. 429, 442; *Wertheimer v. State,* 201 Ind. 572, 169 N.E. 40. The court's charge that the jury could conclude that the TV set was concealed if it believed testimony that the television set was placed by the defendant in a sun porch of his private home out of the view of the general public was correct. Concealment is not limited to proof that the stolen property was hidden or kept out of sight, it is enough if it is proven that the property was withheld from the owner and made difficult for the owner to discover and this includes acts or conduct which enables the one who received the stolen goods to convert the property to his own use. *Commonwealth v. Matheson,* 328 Mass. 371, 103 N.E.2d 714; *State v. Crum,* 255 La. 60, 229 So.2d 700; *Wertheimer v. State,* supra; 66 Am.Jur.2d, Receiving Stolen Property, § 4." *State v. Moynahan,* 164 Conn. 560, 325 A.2d 199, 212 (1973), cert. denied 414 U.S. 976, 94 S.Ct. 291, 38 L.Ed.2d 219 (1973).

Certainly appellant was concealing the stolen vehicle from its lawful owner, who lived in Michigan, by driving said vehicle to Wyoming. It was unlikely that the owner would discover its whereabouts. There was more than sufficient evidence of concealment.

Affirmed.

THOMAS, Chief Justice, specially concurring.

I have no essential disagreement with the disposition of this case as the majority has done. I would, however, be disposed to support the district judge in his conclusion that the appellant had no standing to object to the search and seizure of evidence in this case. It is my view that the focus in the context of standing to object to a search has come to be the legitimate expectation of privacy of the accused in the premises or articles which are searched. *Rakas v. State of Illinois,* 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), reh. denied 439 U.S. 1122, 99 S.Ct. 1035, 59 L.Ed.2d 83 (1979); *Parkhurst v. State,* Wyo., 628 P.2d 1369, 1374 (1981), cert. denied 454 U.S. 899, 102 S.Ct. 402, 70 L.Ed.2d 216 (1981). If the legitimate expectation of privacy is a threshold concept with respect to standing then I contend that one in possession of a stolen motor vehicle must bear the burden at a suppression hearing, with respect to evidence obtained from that stolen motor vehicle, of demonstrating a legitimate expectation of privacy with respect to the stolen motor vehicle and its contents. I do not understand the record in this case as containing a satisfaction of that burden by the appellant. Furthermore, I think it is questionable whether one in possession of a stolen motor vehicle could in most instances establish a reasonable expectation of privacy.