**Gerald A. CALLAWAY, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. 96–161.**

Supreme Court of Wyoming.

March 3, 1998.

---

Sylvia Lee Hackl, State Public Defender, PDP; Donna Domonkos, Assistant Public Defender; Deborah Cornia, Assistant Public Defender; and Jason M. Tangeman (argued), Assistant Public Defender, for Appellant (Defendant).

William U. Hill, Attorney General; Paul Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Georgia L. Tibbetts (argued), Senior Assistant Attorney General, for Appellee (Plaintiff).

Before TAYLOR, C.J., and THOMAS, MACY, GOLDEN and LEHMAN, JJ.

THOMAS, Justice.

The issue presented by Gerald A. Callaway (Callaway) in this case is the legality of a search of his vehicle that resulted in the discovery and seizure of some five ounces of marijuana. Callaway attacks the search by invoking the Fourth Amendment to the Constitution of the United States and Article 1, Section 4 of the Constitution of the State of Wyoming, asserting that if he does not enjoy protection under the Constitution of the United States, the State can afford greater protection under the provisions of the State Constitution. Callaway entered a conditional

plea of guilty to a charge of knowingly possessing the marijuana in violation of WYO. STAT. § 35–7–1031(c)(iii) (Supp.1995), reserving his right to appeal the adverse ruling of the district court on his motion to suppress the marijuana as evidence. At the suppression hearing, the State relied upon the existence of probable cause to search Callaway's vehicle for evidence, and the trial court ruled that probable cause to conduct the search was present. A secondary justification, inventory search, also was articulated. We hold that there was probable cause to search Callaway's vehicle for stolen property, and the Judgment and Sentence entered in the district court is affirmed.

In the Brief of Appellant, Callaway advances two issues:

> *ISSUE I*
>
> Did the warrantless search of the Appellant's vehicle violate both [ ] Art. 1, § 4 of the Wyoming Constitution and the Fourth Amendment of the United States Constitution?
>
> *ISSUE II*
>
> Because Art. 1, § 4 of the Wyoming Constitution provides greater constitutional protection than the Fourth Amendment of the United States Constitution in the area of warrantless searches and seizures, was the warrantless search of Appellant's vehicle unreasonable?

The State asserts only a single issue in its Brief of Appellee:

> Was the warrantless search of Appellant's vehicle following his arrest unreasonable under the Fourth Amendment to the United States Constitution and Art. 1, § 4 of the Wyoming Constitution?

On December 12, 1995, a deputy sheriff assigned to the Sweetwater County Sheriff's Department received information over his patrol car radio from Uinta County authorities that an individual had driven away from a filling station at Fort Bridger without paying for the gas that he put in the vehicle. The vehicle was described as a 1973 red Chevrolet pickup with Wyoming county ten license plates, which was pulling a homemade trailer, covered by a brown tarp. The vehicle was reported to be heading eastbound on Interstate 80 toward Green River. The driver of the vehicle, its sole occupant, was described as a heavyset, bearded male.

Sometime later, the deputy sheriff received a second report of a theft of gasoline. That theft occurred at the Red Feather Inn in Green River, and the report advised that a bottle of vodka and a bottle of creme de menthe had been stolen as well as the gas. There was no indication in the report as to the size of the bottles that were taken. The descriptions of the driver and the vehicle were identical to those furnished in the earlier report from Fort Bridger. After receiving the report of the second theft, the deputy sheriff endeavored to intercept the suspect's vehicle at Mile Post 99 on Interstate 80. Almost immediately after reaching that vantage point, the deputy sheriff observed a vehicle pulling a trailer and traveling east that matched the description of the vehicle and trailer in the two theft reports. The deputy sheriff activated his emergency lights and succeeded in stopping the vehicle, although the driver was unresponsive for a little over a mile.

After stopping his vehicle, Callaway got out and began walking toward the deputy sheriff. The deputy ordered Callaway to stop, but he kept coming toward the deputy. After a second unsuccessful attempt to cause Callaway to remain where he was, the deputy drew his weapon. With the weapon pointed at him, and the issuance of another command to halt by the deputy, Callaway raised his hands and complied with the deputy's directions.

A Wyoming highway patrolman arrived at the scene as Callaway was complying with the deputy sheriff's command to place his hands on the back of the trailer, and at the direction of the deputy, the highway patrolman placed Callaway in handcuffs and advised him of his arrest for larceny. The deputy sheriff testified at the suppression hearing that Callaway obviously was arrested when he was placed in the handcuffs, but that probably he was under arrest as early as the time when the deputy drew his weapon.

After Callaway was arrested, the deputy sheriff began looking for the two stolen bottles of liquor in Callaway's pickup. While standing outside the vehicle and by the use

of his flashlight, the deputy sheriff saw a bottle on the dashboard through the driver's side window.[1] He had not yet entered Callaway's vehicle, and lawfully was standing immediately outside the driver's side window. The deputy then entered Callaway's pickup and first examined the empty fifth size bottle that he had observed on the dashboard. He determined that it was not either of the stolen liquor bottles, and he replaced it on the dashboard. From that vantage point, he also observed the bottom of another liquor bottle protruding from a blanket on the driver's seat. The deputy then picked up the bottle that he had seen protruding from under the blanket; he discovered that not only was it a bottle of creme de menthe, but a tag bearing the name of the Red Feather Inn was dangling from the neck of the bottle.

After finding the bottle of creme de menthe, the deputy continued to search for the second bottle. While searching for the bottle of vodka, the deputy found a blue duffle bag hidden under the same blanket that had concealed the creme de menthe bottle. He opened the duffle bag and found a clear plastic bag that contained a green, leafy substance, which his experience lead him to believe was marijuana. There was also a baby food jar that contained what he believed to be marijuana seeds. The deputy sheriff removed the duffle bag containing the suspected substances and placed it in his patrol car.

The deputy then continued to search for the stolen bottle of vodka. In doing so, he focused his search on areas that he believed Callaway might have been able to reach while sitting in the vehicle. The area searched included the passenger-side floor board, the floor board under the driver's seat, and pouches on the front and rear of the cover for the bench seat. As he was examining the rear pouches on the bench seat cover, directly behind the driver's seat, the deputy sheriff found a paper bag, approximately six inches wide and eight inches tall that appeared new. The contents of the bag felt solid, and the deputy opened it to determine whether the vodka bottle was in it. Inside the paper bag was a large plastic bag

that contained several smaller bags. Each of these smaller plastic bags appeared to contain marijuana, and the deputy sheriff removed the paper bag and placed it in his patrol car.

At that juncture, the deputy sheriff stopped searching Callaway's vehicle and decided to impound it and obtain a search warrant for a further search. The deputy sheriff testified that this decision was premised on the standard policy of the Sweetwater County Sheriff's office which required officers to tow and impound any vehicle that was stopped on a public highway when the driver was arrested. The deputy sheriff also testified that, again in accordance with the policy of the Sweetwater County Sheriff's office, he prepared an inventory sheet detailing the items that he had observed up to the discovery of the paper bag, when he discontinued his search. The deputy intended to resume the search and inventory of the contents of Callaway's vehicle after a search warrant had been issued by the Sweetwater County Court.

The next day, a criminal information was filed in the County Court for Sweetwater County charging Callaway with unlawful possession of approximately five ounces of marijuana in violation of WYO. STAT. § 35–7–1031(c)(iii) (Supp.1995). He was bound over to district court following a preliminary hearing, and when he was arraigned in district court, he entered a plea of not guilty. Callaway filed a motion to suppress all evidence seized by law enforcement officers during the search of his vehicle. The court conducted an evidentiary hearing, and denied Callaway's motion, ruling that the warrantless search of Callaway's vehicle and the seizure of the marijuana was permissible under the automobile exception to the warrant requirements of the Constitution of the United States and the Constitution of the State of Wyoming.

Callaway then changed his plea to guilty in accordance with the provisions of WYO. R. CRIM. P. 11. Under that rule, he was permitted to enter a plea of guilty conditioned

---

1. The invocation of the flashlight was permissible according to *U.S. v. Lee*, 274 U.S. 559, 563, 47 S.Ct. 746, 748, 71 L.Ed. 1202 (U.S.Mass.1927).

upon his right to appeal the ruling on the motion to suppress. Callaway was sentenced to a term of not less than two nor more than four years in the Wyoming State Penitentiary; ordered to pay $50.00 to the Wyoming Crime Victim Compensation Fund; and ordered to pay $550.00 for the services of the public defender. Execution of the sentence was suspended, and he was placed on four years supervised probation. Callaway appealed from the Judgment and Sentence. Subsequently, his probation was revoked and the original two to four year sentence was reimposed.

While the precise bases for the ruling of the district court, denying Callaway's motion to suppress, are obscure to a degree, it appears from the record that the deputy sheriff was relying upon probable cause to search for evidence of the theft of the liquor from the Red Feather Inn. The district court did rule that there was probable cause to stop Callaway and arrest him, and that he was under arrest at the time of the search.[2] The court concluded that it was permissible to search without a warrant based upon reasonable cause to believe that the evidence of the theft could be found in Callaway's vehicle. In 1982, the Supreme Court of the United States said:

> [T]he justification to conduct such a warrantless search does not vanish once the car has been immobilized; nor does it depend upon a reviewing court's assessment of the likelihood in each particular case that the car would have been driven away, or that its contents would have been tampered with, during the period required for the police to obtain a warrant.

*Michigan v. Thomas,* 458 U.S. 259, 261, 102 S.Ct. 3079, 3080–81, 73 L.Ed.2d 750 (U.S.Mich.1982). The district court also ruled that the deputy sheriff had probable cause to initiate a search for the stolen liquor bottles under the plain view doctrine. This ruling was cumulative to the probable cause based upon the information furnished to the deputy about the theft of the bottles of liquor.

The factual findings of the trial court at the hearing on the motion to suppress are binding on our court unless they are clearly erroneous. *Neilson v. State,* 599 P.2d 1326, 1330 (Wyo.1979), *cert. denied,* 444 U.S. 1079, 100 S.Ct. 1031, 62 L.Ed.2d 763 (U.S.Wyo.1980). We have plenary authority with respect to the issue of law, whether the search and seizure were unreasonable and therefore in violation of Callaway's constitutional rights, and it is subject to *de novo* review in this court. *Wilson v. State,* 874 P.2d 215, 218 (Wyo.1994).

Both the Fourth Amendment to the Constitution of the United States and Article 1, Section 4 of the Constitution of the State of Wyoming protect citizens from unreasonable searches and seizures. Searches and seizures that are made without a warrant or outside the judicial process are *per se* unreasonable under both the Fourth Amendment and Article 1, Section 4 of the Wyoming Constitution. *Roose v. State,* 759 P.2d 478, 481 (Wyo.1988); *Brown v. State,* 738 P.2d 1092, 1094 (Wyo.1987); *Hunter v. State,* 704 P.2d 713, 715 (Wyo.1985). In *Roose* we acknowledged specifically established and well delineated exceptions. We recognized the difference between motor vehicles and other property, which justifies warrantless searches of automobiles in circumstances in which warrantless searches would not be reasonable if an automobile were not involved, in *Neilson,* 599 P.2d at 1330. This distinction has come to be known as the "automobile exception," but that term is not entirely precise. The Supreme Court of the United States has stated expressly that there is "no general 'automobile exception' to the warrant requirement." *South Dakota v. Opperman,* 428 U.S. 364, 382, 96 S.Ct. 3092, 3103, 49 L.Ed.2d 1000 (U.S.S.D.1976).

Subsequent cases addressing this doctrine reflect that warrantless searches of an automobile and any containers within the automobile which might contain contraband are permissible if, at the time of the search, the officers have probable cause to believe that contraband is secreted at some unspeci-

---

2. An arrest without a warrant is permitted under such circumstances pursuant to WYO. STAT. § 7–2–102 (1995).

fied location within the automobile. *California v. Acevedo*, 500 U.S. 565, 111 S.Ct. 1982, 114 L.Ed.2d 619 (U.S.Cal.1991); *U.S. v. Ross*, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (U.S.Dist.Col.1982); *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (U.S.Mich.1925). We have utilized the same doctrine with respect to automobile searches. *Hunter*, 704 P.2d at 717. In *Hunter* we held that the scope of a warrantless search of a vehicle is to be defined by the object of the search and the places in which there is probable cause to believe that such an object might be found. *Hunter*, 704 P.2d at 717. In this instance, the deputy sheriff had probable cause to believe that the liquor bottles might be found within Callaway's vehicle.

■ While Callaway contends that the two bottles found by the deputy, the one on the dashboard and the one protruding from the blanket, were the bottles stolen from the Red Feather Inn, the deputy sheriff was not required to discontinue his search. The record is clear that the bottle on the dashboard was not the vodka bottle which had been reported stolen. The deputy sheriff had probable cause to believe that the other stolen bottle was secreted at some unspecified location within the appellant's automobile, and he could legally continue his search.

■ The discovery of the marijuana during the course of the further search is made lawful by another well recognized exception to the requirement for a warrant, the "plain view" doctrine. In *Jones v. State*, 902 P.2d 686, 692 (Wyo.1995), we held that objects which an officer has probable cause to believe are possible evidence and which are in the officer's plain view, when the officer is lawfully present in the place in which the objects are found, are subject to a warrantless seizure without any necessity for exigent circumstances being present. In this instance, however, there were exigent circumstances because an automobile was being searched. According to *Gronski v. State*, 910 P.2d 561 (Wyo.1996), *reviewing Neilson*, automobiles, as explained in *Carroll* and *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (U.S.Pa.1970), do incorporate the requisite exigent circumstances. This record is clear that the marijuana, clearly contraband, came into plain view when the

deputy sheriff was looking in places he was entitled to look for the other bottle of liquor. It is clear in this case that the ruling of the trial court on the motion to suppress must be affirmed so far as Callaway alleges a violation of the Fourth Amendment to the Constitution of the United States.

■ Callaway argues, however, that should the search be perceived as lawful under the Fourth Amendment, a separate analysis under the Constitution of the State of Wyoming could lead to a different result because of our suggestions that the Constitution of the State of Wyoming offers greater protection to its citizens than the federal constitution. Callaway's argument is based upon a six part test articulated in *Saldana v. State*, 846 P.2d 604, 622 (Wyo.1993), and he correctly urges that these factors are not exclusive. *State v. Gunwall*, 106 Wash.2d 54, 720 P.2d 808, 812 (1986). In response, the State contends that Callaway's argument does not suffice to justify the conclusion that Article 1, Section 4 of the Constitution of the State of Wyoming offers greater protection. The State argues that Callaway has not demonstrated historical reference relative to Article 1, Section 4 of the Wyoming Constitution; has not presented authority that a warrantless automobile search requires a more stringent showing than the federal requirements; and fails to identify and apply to this case the extent of the greater protections which Callaway asserts are afforded. We agree with the State's delineation of the failures found in the Callaway's argument. It is not premised upon authority and cogency is indeed slim. It does not persuade us that in an instance such as this greater protection should be afforded under the Constitution of the State of Wyoming than is afforded by the federal constitution.

We noted in *Gronski* that our approach to the search and seizure area usually has implied the reading of the state and federal constitutions together and treating the scope of the state provision as the same as that of the federal provision. *Gronski*, 910 P.2d at 565–66 (citing, *Parkhurst v. State*, 628 P.2d 1369, 1374 (Wyo.1981), *cert. denied*, 454 U.S. 899, 102 S.Ct. 402, 70 L.Ed.2d 216 (1981)). We perceive the protection furnished by the

two constitutional provisions to be identical in this case.

Callaway's Judgment and Sentence is affirmed.