## 61370. CHILDERS v. THE STATE.

Pope, Judge.

Gina Gwen Childers was convicted of violating the Georgia Controlled Substances Act. Her sole enumeration of error on appeal is the trial court's denial of her motion to suppress evidence.

On March 21, 1980 three Whitfield County law enforcement officers executed a search warrant at the residence of one James M. Brock. Having just been arrested for possession of marijuana, Brock was in jail at the time of the search. When the officers arrived at Brock's residence, they observed appellant and one Gary Hudgens inside playing a game of "bumper pool." A one pound bag of marijuana was situated approximately 15 feet away and in open view. Prior to beginning their search of the premises, the officers advised appellant and Hudgens of their Miranda rights and instructed them to be seated.

The search warrant authorized the officers to search Brock's residence for an undetermined amount of marijuana. During the course of the search, one of the officers searched a woman's pocketbook or purse situated in close proximity to appellant. After finding 25 methaqualone (Quaalude) tablets in the purse, the officer asked appellant if the purse were hers. She responded in the affirmative. The trial court ruled that since the officer did not know that the purse belonged to appellant when he searched it, the search thereof was the same "as the search of any other items located in the residence which was the scene for execution of the search warrant."

The instant case is not one in which the warrant contained language authorizing the search of any person present on the premises. See *Wallace v. State,* 131 Ga. App. 204 (1) (205 SE2d 523)(1974). Nor does the state contend that there was any independent justification for the search. See Code Ann. § 27-309; *State v. Shope,* 147 Ga. App. 119 (248 SE2d 188)(1978). Therefore, the issue presented by this appeal is whether the search of the purse was a legitimate part of the search of the premises or an unconstitutional search of appellant's person.

The officer who searched appellant's purse testified as follows: "Q. . .When did you search the person and/or purse of Gina Childers? A. It was during the course of the search. . .I was working through the living room when I came upon the purse with the Quaalude tablets in it. Q. All right, now, where was the purse? A. . . .[A]s you go in the front door, it would be the back left-hand corner of the [living room] area. There was an easy chair, and a table, and then a couch. And the purse was either on the end table there or right next to it, there between the easy chair and the couch. . . . Q. Where was she [appellant] sitting at

the time you searched her purse? A. I don't remember if it was on the couch or the chair; it was right there in close proximity. Q. Were there any other females in the room? A. No sir. Q. Were there any other purses in the room? A. No sir. Q. Did you ask her if it was her purse? A. I don't remember exactly how I worded it. When I found the Quaaludes, I made the statement — I don't remember exactly what I said . . . Q. And this purse was located right next to her on the table? A. It was either between the easy chair and the couch or on the table, somewhere in that area, yes sir."

" 'The courts of this state have often held that searches of persons not named in a search warrant but found on the premises to be searched are illegal absent independent justification for a personal search. (Cits.). . .Searches of a paper bag carried under a person's arm (*Brown v. State,* 133 Ga. App. 500 (3) (211 SE2d 438) [(1974)]) and of a plastic bag in a person's pocket (*Willis v. State,* 122 Ga. App. 455 (177 SE2d 487) [(1970)] ) have been treated as searches of the person.' *Hayes v. State,* 141 Ga. App. 706, 707 (234 SE2d 360)(1977). *Hayes* expanded the concept of personal boundaries to include a suitcase next to the couch on which appellant was found sleeping." *Wyatt v. State,* 151 Ga. App. 207, 208 (259 SE2d 199)(1979).

"An analysis which focuses entirely on whether a belonging is in the physical possession of a non-resident visitor to premises searchable under a warrant, while it serves to protect the zone of privacy around the visitor's person, ignores the substantial interest the visitor has in the privacy of all his possessions, wherever located. To overcome that interest, the federal and state constitutions require a warrant supported by probable cause. And a warrant to search premises only cannot logically meet this requirement since by hypothesis there is no way to know, at the time the warrant is issued, whether the visitor or his possessions will even be present at the premises when the warrant is executed, let alone whether his possessions are likely to contain the items listed in the warrant. Of course, the rule is otherwise when the warrant is used as a basis to search the belongings of a resident of the suspect locale. . .for the resident's control over the premises provides a nexus between [him] and his belongings which is absent in connection with the possessions of a non-resident visitor. [Cits.]

"On the other hand, the police cannot realistically be expected to avoid searching the property of a mere visitor to the premises unless they are aware of its ownership. Absent a requirement of such awareness, the effective execution of a warrant to search a place would be impossible since the police could never be sure that a plausible repository for items named in the warrant belongs to a resident, and hence is searchable, or to a non-resident, and hence is

not searchable. Because of this, without notice of some sort of the ownership of a belonging, the police are entitled to assume that all objects within premises lawfully subject to search under a warrant are part of those premises for the purpose of executing the warrant." State v. Nabarro, 55 Hawaii 583, 587 (525 P2d 573)(1974). See United States v. Micheli, 487 F2d 429 (1 Cir. 1973).

"Whether the police had notice that they were searching the personal effects of a visitor to searched premises must be determined on the facts of each case. In the present case, we believe the officers had enough notice that they were searching the personal effects of a person they had no authority to search so that the search was an unreasonable intrusion into the appellant's privacy." *Hayes,* supra at 709. There was no evidence to indicate that appellant was other than a mere visitor to the searched premises; her relationship to the premises was not known but was at best subject to speculation. The presence of a woman's purse under the circumstances in this case should at least have raised a suspicion in the mind of the officer that the purse belonged to the only woman present. "Personal belongings brought by their owner on a visit to a friend's house retain their constitutional protection *until their owner meaningfully abdicates control or responsibility.* Appellant's placing [her purse] on the floor of [Brock's] apartment. . .does not amount to an abandonment of [her] control. Appellant maintained [her] reasonable expectation of privacy. And therefore the search of [her purse] was unreasonable and constitutionally impermissible." (Emphasis supplied.) Commonwealth v. Platou, 455 Pa. 258 (312 A2d 29, 34) (1973). Accord, *Hayes,* supra; Nabarro, supra; People v. Lujan, 174 Colo. 554 (484 P2d 1238)(1971). See also Johnson v. United States, 333 U. S. 10 (68 SC 367, 92 LE 436) (1948). United States v. Teller, 397 F2d 494 (7 Cir. 1968), cited by the state as support for the search of the purse, is factually distinguishable from the instant case.

*Judgment reversed. Quillian, C. J., and McMurray, P. J., concur.*

DECIDED MAY 22, 1981.

*J. Britten Miller, Jr.,* for appellant.

*Stephen A. Williams, District Attorney, Marcus R. Morris, Assistant District Attorney,* for appellee.