## State of Vermont v. John Beresford

[592 A.2d 882]

No. 88-248

Present: Allen, C.J., Peck, Gibson, Dooley and Morse, JJ.

Opinion Filed April 12, 1991

*Thomas M. Kelly*, Drug Prosecutor, Department of State's Attorneys, Montpelier, for Plaintiff-Appellee.

*Mikell & Mikell, P.C.*, Burlington, for Defendant-Appellant.

**Gibson, J.** Defendant appeals from his conviction of possession of a regulated drug, claiming the court erred in denying his

motion to suppress evidence obtained without consent or warrant from inside a small zipped shaving kit found at the scene of a traffic accident. We reverse.

On May 22, 1987, defendant and a passenger were driving north on Route 116 at a speed of fifty to sixty miles per hour when defendant lost control of his pickup truck. The truck overturned and landed on its rooftop off the west side of the highway. Shortly after the accident, while state police were interviewing defendant, a fireman led a police officer to a shaving kit he had found near the overturned truck. The kit was approximately twenty to twenty-five feet from the truck, lying beside a telephone pole that was between the truck and the highway. The kit was visible from the truck but not the road. Other debris from the truck was scattered some fifteen feet east of the telephone pole thirty-five to forty feet from the truck. Without determining whether the shaving kit belonged to the occupants of the truck, the officer unzipped the kit and found two plastic baggies containing psychoactive mushrooms. At trial, the officer testified that he unzipped the kit to "determine if there was anything that could hurt anybody around the area" and to "check[] for any intoxicants that were in the bag." Believing that the baggies contained an illegal substance, the officer presented them to defendant, who initially denied, but later admitted, owning them.

At the suppression hearing, the court made the following findings:

> Well, I find the property was by the pole twenty-five feet from the car that overturned after the accident, the Defendant was apparently one of the operators. There was a simple shaving kit type bag . . . apparently in no one's custody. . . . There's no showing that the property was owned by anyone in particular at the time the officer came upon it. He picked it up, looked inside. I see no impediment to that. No showing that the Defendant had any particular expectation of privacy or that he had any control over it at that point, just left it there.

At trial, the court found as follows:

> The Court will deny the suppression. The bag was between 20 and 25 feet from the highway and appears to be on

the other side of the pole where it wasn't visible from the highway by passersby, and the bag was there and the officer also tried to find out who it was—who owned it; looked for identification, looked for whatever [ ] might be in it. Might be something harmful to persons or people or—and it was investigatory, investigation taking place by the police officer. . . .

Looked like there is some evidence it belonged to the defendant and the operator of the vehicle, so we'll confirm the denial [of] the motion to suppress . . . .

■ Both at the suppression hearing and at trial, the court appears to have based denial of defendant's motion on the fact that the bag had been abandoned, although it is unclear whether either court placed the burden of establishing abandonment on the State. Assuming the State was obligated to prove abandonment by a preponderance of the evidence as opposed to some higher standard, compare *United States v. Levasseur*, 620 F. Supp. 624, 628 (E.D.N.Y. 1985) (preponderance), with *United States v. Abbott*, 584 F. Supp. 442, 451 (W.D. Pa. 1984) (clear and convincing), there was insufficient evidence for either court to conclude that the State had proved abandonment. Therefore, each court's finding of abandonment was clearly erroneous. See *United States v. Thomas*, 864 F.2d 843, 846 (D.C. Cir. 1989) (finding of abandonment is reviewed under a clearly erroneous standard).

■ Neither court made clear findings as to how the kit came to be located where it was discovered. It appears, even from the State's description of the accident scene, that it could have ended up at its final location either by being ejected from the truck as a result of the accident or by being placed there by defendant or some other person following the accident. The kit was in plain view of the truck and closer to it than the other accident debris. Neither of the occupants of the truck had made any attempt to leave the scene of the accident, and there is no evidence whatsoever that defendant placed the kit by the pole in order to secrete it or otherwise abandon it. The State's speculation on the impossibility of the kit winding up where it did cannot satisfy its burden of proof. The finding of abandonment was clearly erroneous.

This case is distinguishable from *State v. Kerr*, 143 Vt. 597, 608–09, 470 A.2d 670, 676 (1983), where, upon the approach of a border agent, the defendant dropped a bag he was carrying and then walked away from it after talking to the agent. Here, considering that the kit was located in plain view twenty to twenty-five feet from an overturned truck that had been in a high-speed accident, the officer should reasonably have concluded that the kit most likely belonged to one of the occupants of the truck, neither of whom had made any attempt to leave the scene of the accident. Compare *Childers v. State*, 158 Ga. App. 613, 615, 281 S.E.2d 349, 351 (1981) (drugs found in woman's purse suppressed where presence of purse in room should have alerted officer to fact that purse belonged to only woman present), with *Mitchell v. State*, 423 So. 2d 904, 905–06 (Ala. Crim. App. 1982) (no suppression of evidence where officer saw defendant place zipped shaving kit containing drugs on ground in open woods and then depart).

■ The court should have granted the motion to suppress because, in the absence of abandonment, the officer had no right to open the kit without the owner's consent. See *Childers*, 158 Ga. App. at 615, 281 S.E.2d at 351–52. In light of our determination that the State has not proved abandonment, we need not address defendant's argument concerning suppression of his statement admitting that he owned the kit.*

*Reversed and remanded.*

**Peck, J.,** dissenting. In its customary zeal to excuse drug traffickers and abusers from the consequences of their crimes, which recently attained a new and lamentable high in *State v. Kirchoff*, 156 Vt. 1, 587 A.2d 988 (1991), the majority employs a rationale that glosses over the real key factor: the defendant's

---

* We need not address in detail the dissent's suggestion that because the officer who opened the kit was outside of his jurisdiction, his action did not trigger constitutional provisions prohibiting unlawful government searches. This issue was never raised by the State, either at the suppression hearing, at trial, or on appeal. Even if argued, the issue would make no difference in the disposition of this case. See *State v. LeGassey*, 456 A.2d 366 (Me. 1983) (fourth amendment applicable where off-duty park ranger "adopted the role of policeman" when he detained drunken driver).

initial denial that he owned the "kit" that contained the contraband.

The majority contends that the prosecution made no showing that defendant had "abandoned" the kit. There are two clear answers to this contention. On the one hand, a person cannot abandon an item he does not own. It is undisputed that, initially, defendant claimed *expressly* that he did *not* own the kit. If, indeed, that had been the case, the fact that the officer opened the kit before confronting defendant would be entirely irrelevant. It would be clear that some unknown and unidentifiable person must have abandoned it.

On the other hand, assuming, as appears to have been the case here, that the kit *had* belonged to defendant, the situation is virtually on all fours with *State v. Kerr*, 143 Vt. 597, 608–09, 470 A.2d 670, 676 (1983), in which an investigating officer saw the defendant drop the plastic bag he had been carrying and walk away from it.

I submit there is more than one way, at least in the figurative sense, to "walk away" from something; another way, certainly, is a disclaimer of ownership of, or interest in, a given item of property. In this case, defendant concedes that the kit lay "in plain view," and yet he denied ownership. It is at *this* point that the question of abandonment must be answered. The officer could have opened the kit with impunity if he had waited for the moment defendant denied ownership. Since, by doing so, however, he himself established an abandonment, it is hypertechnical in the extreme to attach any relevance at all to the earlier point when the kit was opened. The denial constituted an abandonment; what defendant may have said or done thereafter, and what the officer may have done before confronting the defendant, are both wholly irrelevant once abandonment was so clearly established. If the defendant in *Kerr* had returned *after* the officer had inspected the bag, and only then claimed ownership, the result would have been no different.

The State's burden of proof to show abandonment was satisfied as clearly and as simply as it could possibly be done. Moreover, it was accomplished through the defendant's own statement that he did not own the kit, and through his conduct, which showed, as the court found, that he had no "particular expectation of privacy or that he had any control over it at that

point, [he] just left it there." And this notwithstanding, the kit lay "in plain sight."

One of the citations on which the majority appears to rely as an authority for its decision, *Childers v. State*, 158 Ga. App. 613, 615, 281 S.E.2d 349, 351 (1981), is about as far removed from the case before us as is possible. In that case, a woman's purse, found within the limited confines of a room, might logically belong to the *only* woman present; it lay in "close proximity" to where the woman was seated, and was the only one of its kind in the room. Moreover, unlike the defendant in this case, the woman acknowledged from the outset, and *never* denied, ownership of the purse. In the matter before us, the kit was discovered out of doors, a considerable area, one must admit. There was nothing characteristic about it to associate it with anyone, and it was located in a spot, well removed from other accident debris, where it is most unlikely, if not absolutely impossible, that it would have reached if it had been ejected from the truck during the accident. Regardless, these considerations too became irrelevant once defendant disclaimed ownership. The police are not required to obtain anyone's permission to open a container which has been abandoned.

The majority has missed the one simple but conclusive point which establishes the defendant's abandonment of the kit, and should have required an affirmance. Notwithstanding defendant's lack-of-interest conduct and his express disclaimer, the majority succeeds, by a hypertechnicality, in luring back the "moving finger" of Edward Fitzgerald's rendering of the *Rubaiyat*, by after-the-fact reasoning.

> The moving finger writes, and having writ,
> Moves on: nor all your Piety nor Wit
> Shall lure it back to cancel half a line,
> Nor all your tears wash out a Word of it.

What piety, wit and tears could not accomplish, the majority has done by the simple expedient of rewriting the script after the performance has ended and the curtain rung down.

It is remarkable when admission of guilt produces a reversal. The drug-law violators score again with a reversal which should have been an affirmance.