Sandra HOUGHTON, Appellant (Defendant),

v.

The STATE of Wyoming, Appellee (Plaintiff).

No. 96–99.

Supreme Court of Wyoming.

April 3, 1998.

Rehearing Denied April 28, 1998.*

---

* Thomas and Golden, JJ., would have granted Rehearing.

Sylvia L. Hackl, State Public Defender; Donna Domonkos, Appellate Counsel; Michael Dinnerstein, Director, Wyoming Defender Aid Program; T. Alan Elrod and Scott J. Olheiser, Student Interns, for Appellant (Defendant).

William U. Hill, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Georgia L. Tibbetts, Senior Assistant Attorney General; Theodore E. Lauer, Director, Prosecution Assistance Program; and Sandra Boudreaux, Student Intern, for Appellee (Plaintiff).

Before TAYLOR, C.J., and THOMAS, MACY, GOLDEN and LEHMAN, JJ.

TAYLOR, Chief Justice.

Appellant's arrest and conviction on one count of felony possession of a controlled substance was based upon evidence found in her purse during a warrantless search of an automobile in which she was a passenger. On appeal, appellant raises several challenges to her conviction, including the district court's denial of her motion to suppress the evidence found in her purse. We hold that the search of appellant's purse exceeded the reasonable scope of the search of the car, violating her Fourth Amendment rights.

Reversed and remanded.

## I. ISSUES

Although appellant, Sandra Houghton (Houghton), identifies four issues on appeal, the dispositive issue is:

Did the trial court err in denying the Appellant's Motion to Suppress Physical Evidence?

The State of Wyoming, as appellee, phrases the issue as follows:

Did the district court err in denying appellant's pretrial motion to suppress the methamphetamine seized by law enforce-

ment officers during a warrantless search of David Young's automobile?

## II. FACTS

In the early morning hours of July 23, 1995, a Wyoming Highway Patrol Officer stopped an automobile for speeding and a faulty brake light. There were three occupants in the car—the driver, David Young (Young); his girlfriend; and Houghton. Shortly after the stop, the officer was joined by two other law enforcement officers. While the officer was questioning Young, he noticed a syringe in Young's shirt pocket. The officer told Young he was going to get gloves out of the patrol car and would return to question Young about the syringe. While the officer went to his car, another officer kept an eye on the occupants.

Upon his return, the officer ordered Young to step out of the car and to place the syringe on the hood. When the officer asked what the syringe was for, Young responded that he used the syringe to take drugs.

 At that point, the passengers were ordered out of the vehicle and were asked for identification. Houghton, identifying herself as Sandra Jones, stated she did not have identification. All occupants were then "[patted] * * * down, to see if there were any weapons or anything." [1] After the pat down yielded no weapons or contraband, the officer searched the car for drugs.

While searching behind the area where the two female passengers had been seated, the officer found a closed "cloth lady's purse." He opened the purse and removed a wallet. Searching the wallet, the officer found Houghton's driver's license. The officer then told Houghton to approach the driver's side of the vehicle, where she stated that the purse was hers. Without further comment, the officer continued his search, removing a

brown "wallet bag" containing drug paraphernalia, a syringe containing an estimated 60 cc's of liquid, a black wallet containing drug paraphernalia, a vial, and a syringe with approximately 10 cc's of liquid. After a field test of a small amount of the liquid from the syringe in the brown bag tested positive for methamphetamine, the officer took custody of the two containers, returned the purse to the car, and arrested Houghton for possession of a controlled substance. Young and his girlfriend were released.

Prior to trial, Houghton moved to suppress the evidence found in her purse, asserting there was no probable cause to search her belongings. Following a hearing, the district judge issued a decision letter which denied Houghton's motion to suppress the contents of her purse. Relying on *California v. Acevedo*, 500 U.S. 565, 580, 111 S.Ct. 1982, 1991, 114 L.Ed.2d 619 (1991), the district judge found that the officer had probable cause to search the car for contraband and, therefore, any containers within the car which could hold the contraband were subject to search.

A jury found Houghton guilty of one count of felony possession of a controlled substance. After Houghton unsuccessfully moved for acquittal or a new trial, she was sentenced to not less than two nor more than three years at the Wyoming Women's Center. This timely appeal followed.

## III. STANDARD OF REVIEW

 On a motion to suppress evidence, the moving party must establish by a preponderance of the evidence that her rights were violated. *Guerra v. State*, 897 P.2d 447, 452 (Wyo.1995) (*quoting Malcolm v. United States*, 332 A.2d 917, 918 (D.C.App.1975)). The constitutional touchstone of a search and/or seizure is whether the search unrea-

---

1. Since the pat down search of Young and the passengers failed to reveal any weapons or contraband, the propriety of the search was not addressed on appeal. However, we are concerned that the officers apparently believed that they were able to search the passengers of the vehicle absent probable cause to believe the passengers were engaged in illegal activity or any indication that the passengers posed a danger to the police officers. Here, there was no testimony which established that the driver or the occupants may be armed, and no weapons observed within the vehicle. Indeed, it appears that all the occupants of the car were cooperative throughout the stop. Thus, we perceive no reasonable basis for the pat down search of the passengers under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) and its progeny, or *Perry v. State*, 927 P.2d 1158 (Wyo.1996).

sonably violated a justifiable expectation of privacy. *Saldana v. State*, 846 P.2d 604, 610–11 (Wyo.1993). "Whether a search is reasonable is to be determined from the facts and circumstances of the case in light of the 'fundamental criteria' that are found in the Fourth Amendment * * *." *Id.* at 611. We defer to the district court's findings of fact regarding the circumstances attending the search and seizure and review those findings "pursuant to an abuse of discretion-clearly erroneous standard * * *." *Hall v. State*, 911 P.2d 1364, 1367 (Wyo.1996). However, whether a search and seizure is unreasonable, thereby violating constitutional protections, is ultimately a question of law which warrants *de novo* review. *Id.*

## IV. DISCUSSION

The issue before us is whether the personal belongings of a passenger may be searched under the "automobile exception" when probable cause exists to search the automobile, but there is no probable cause to believe the passenger is involved in criminal activity. Houghton does not contest the probable cause to conduct the search of Young's car for drugs, but asserts that in the absence of probable cause to believe she possessed contraband, the search of her purse violated her justifiable expectation of privacy in her personal belongings. The State counters that the officers had no duty to determine probable cause as to each container within the car, and consequently, the permissible scope of the search included the search of all containers, including a passenger's purse.

■ The Fourth Amendment of the United States Constitution provides citizens "[t]he right * * * to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures * * *."[2] General seizures are prohibited; all searches must be supported by probable cause to believe evidence of a crime will be found.

2. Wyo. Const. art. 1, § 4 is "somewhat stronger than its federal counterpart, in that under our Wyoming Constitution it is mandatory that the search warrant be issued upon an affidavit." *Hall*, 911 P.2d at 1368. Although Houghton's

"The requirement that warrants shall particularly describe the things to be seized makes general searches under them impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant."

*Hall*, 911 P.2d at 1369 (*quoting Marron v. United States*, 275 U.S. 192, 196, 48 S.Ct. 74, 76, 72 L.Ed. 231 (1927)).

■ The scope of a search is defined by the probable cause upon which that search is predicated, *not* whether the search is conducted pursuant to a warrant or pursuant to a recognized exception to the warrant requirement. The Supreme Court of the United States has unequivocally held that "[t]he scope of a warrantless search based on probable cause is no narrower—and no broader— than the scope of a search authorized by a warrant supported by probable cause." *United States v. Ross*, 456 U.S. 798, 823, 102 S.Ct. 2157, 2172, 72 L.Ed.2d 572 (1982) (*quoted in Hunter v. State*, 704 P.2d 713, 717 (Wyo.1985), detailing the line of cases leading to the holding in *Ross*). Neither is the permissible scope of the search dependent on the place being searched, but on the object of the search.

A warrant to search a vehicle would support a search of every part of the vehicle *that might contain the object of the search.* When a legitimate search is under way, and *when its purpose and its limits have been precisely defined,* nice distinctions between closets, drawers, and containers, in the case of a home, or between glove compartments, upholstered seats, trunks, wrapped packages, in the case of a vehicle, must give way to the interest in the prompt and efficient completion of the task at hand.

*Ross*, 456 U.S. at 821, 102 S.Ct. at 2171 (emphasis added). *See also Acevedo*, 500 U.S. at 580, 111 S.Ct. at 1991.

claims rely on both federal and state constitutional mandate, she does not distinguish the protection afforded by the Wyoming Constitution from that of its federal counterpart. *See Gronski v. State*, 910 P.2d 561, 566 (Wyo.1996).

■ Thus, as *Ross* and *Acevedo* make clear, the permissible scope of the warrantless search of Young's car under the automobile exception is identical to a search conducted pursuant to a warrant. The problem in this case is that while Houghton's purse could physically contain the object of the search, there was no probable cause to believe that contraband would be found in her personal belongings. Therefore, the question is, if a warrant had issued on the basis that *Young* held drugs in his car, whether the search of the personal effects of a *passenger or guest* would be within the scope of the warrant.

The United States Supreme Court has not addressed the permissibility of searching a guest's or passenger's belongings, but has considered the search of a guest's person. *Ybarra v. Illinois*, 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979). In *Ybarra*, a search was conducted pursuant to a warrant to search the premises of the Aurora Tap Tavern and the person of the bartender, "Greg," based on probable cause that Greg was dealing drugs while at work. During the search, the officers conducted a pat down search of a customer in the bar, resulting in the discovery that the patron carried a quantity of drugs. The United States Supreme Court held that the pat down search was an unconstitutional violation of the patron's reasonable expectation of privacy, stating: "a person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person." *Ybarra*, 444 U.S. at 91, 100 S.Ct. at 342.

> Where the standard is probable cause, *a search or seizure of a person must be supported by probable cause particularized with respect to that person.* This requirement cannot be undercut or avoided by simply pointing to the fact that coincidentally there exists probable cause to search or seize another or to search the premises where the person may happen to be. The Fourth and Fourteenth Amendments protect the "legitimate expectations of privacy" of persons, not places. * * *

Each patron who walked into the Aurora Tap Tavern on March 1, 1976, was clothed with constitutional protection against an unreasonable search or an unreasonable seizure. That individualized protection was separate and distinct from the Fourth and Fourteenth Amendment protection possessed by the proprietor of the tavern or by "Greg." Although the search warrant, issued upon probable cause, gave the officers authority to search the premises and to search "Greg," it gave them no authority whatever to invade the constitutional protections possessed individually by the tavern's customers.

*Ybarra*, 444 U.S. at 91–92, 100 S.Ct. at 342. *See also United States v. Di Re*, 332 U.S. 581, 587, 68 S.Ct. 222, 225, 92 L.Ed. 210 (1948) ("We are not convinced that a person, by mere presence in a suspected car, loses immunities from search of his person to which he would otherwise be entitled.").

Although the United States Supreme Court's direct concern in *Ybarra* was the impermissible intrusion on the person rather than the belongings of the patron, courts have recognized that "special concerns" are raised "when the items searched belong to * * * visitors to the premises described in the warrant." *State v. Andrews*, 201 Wis.2d 383, 549 N.W.2d 210, 212 (1996). "Such searches may become personal searches outside the scope of the premises search warrant requiring independent probable cause" for searching the personal item at issue. *United States v. Giwa*, 831 F.2d 538, 544 (5th Cir.1987).

Jurisdictions considering the problem have reached different conclusions as to when separate probable cause is necessary to search the belongings of a visitor to the premises. Generally, three tests have evolved when analyzing this issue: the "physical proximity" or "physical possession" test; the "relationship" test; and the prodigy of the relationship test, the "notice" test. *See, generally*, 2 Wayne R. LaFave, *Search and Seizure*, § 4.10(b) (3rd ed.1996).

A substantial minority of courts have adopted the "physical proximity" test, which allows the search of objects, but prohibits the search of a person. The physical nexus between the person and the object searched determines whether the item will be consid-

ered an extension of the "person." *United States v. Teller*, 397 F.2d 494, 497 (7th Cir.), *cert. denied*, 393 U.S. 937, 89 S.Ct. 299, 21 L.Ed.2d 273 (1968) (search of woman's purse upheld when purse placed on the bed during search).[3] If the object is close enough to be considered an extension of its owner, the search is outside the scope of the search of another's premises.

*Andrews* is illustrative of contemporary application of the "physical proximity" test. The Wisconsin court held that police executing a search warrant for private premises may search all items that are "plausible repositories" for objects of the search *except* those worn by or in physical possession of persons whose search is not authorized by warrant. *Andrews*, 549 N.W.2d at 218. Noting that none of the tests courts have used to determine whether a visitor's belongings are within the scope of a search have been without criticism, the Wisconsin court found that the "physical proximity" test comports with *Ybarra* by distinguishing the search of a person from a less intrusive search of belongings. The Wisconsin court also found the "physical proximity" test to be less susceptible to abuse, more easily applied, and more likely to render consistent results regarding admissibility of the evidence at trial. *Andrews*, 549 N.W.2d at 217.

While our analysis is similar to that of the Wisconsin court, we are not persuaded that the "physical proximity" approach affords sufficient recognition of reasonable expectations of privacy in the absence of individualized probable cause. Neither are we convinced that "physical proximity" provides the most efficacious balance between legitimate individual and state interests.

A majority of courts have rejected the "physical proximity" test, generally on the rationale that "the protective boundary established by requiring a search warrant

should encompass those extensions of a person which he reasonably seeks to preserve as private, regardless of where he may be." *United States v. Micheli*, 487 F.2d 429, 432 (1st Cir.1973). In *Micheli*, the court further opined:

A focus on actual physical possession is too narrow, however, in that it would leave vulnerable many personal effects, such as wallets, purses, cases, or overcoats, which are often set down upon chairs or counters, hung on racks, or checked for convenient storage. The Fourth Amendment's basic interest in protecting privacy * * * and avoiding unreasonable governmental intrusions * * * is hardly furthered by making its applicability hinge upon whether the individual happens to be holding or wearing his personal belongings after he chances into a place where a search is underway. The rudest of governmental intrusions into someone's private domain may occur by way of a search of a personal belonging which had been entrusted to a nearby hook or shelf. The practical result of such a rule may be to encourage the government to obtain search warrants for places frequented by suspicious individuals, such as infamous bars, then lie in wait for those individuals to enter and make themselves comfortable.

*Id.* at 431.

Based on this reasoning, courts have rejected the "physical proximity" test in favor of either a "relationship" test, a "notice" test, or a combination of the two. The "relationship" test looks to the nexus between the person, the effects searched, and the premises. Under this approach, if the items belong to someone who is more than a "visitor" or the effects have a special relationship to the place, then they are part of the premises which may be searched. If not, the personal effects are outside the scope of a premises warrant. *United States v. Young*, 909 F.2d

---

**3.** *See also United States v. Branch*, 545 F.2d 177, 182 (D.C.Cir.1976) (search not permitted where bag being carried on shoulder of person who walked into residence while search being executed, combination of factors must be considered); *United States v. Johnson*, 475 F.2d 977, 979 (D.C.Cir.1973) (upholding search of purse placed on table in front of visitor); *People v. Coleman*, 436 Mich. 124, 461 N.W.2d 615, 619 (1990)

(adopts "physical proximity" test but facts sufficient to support reasonable belief that defendant not mere visitor and existence of separate probable cause to search the purse); *State v. Wills*, 524 N.W.2d 507, 511–12 (Minn.App.1994) (upholding search of safe under both "physical proximity" and "notice" tests); *Com. v. Reese*, 520 Pa. 29, 549 A.2d 909, 912 (1988); and *State v. Jackson*, 873 P.2d 1166, 1168 (Utah App.1994).

442, 445 (11th Cir.1990), *cert. denied,* 502 U.S. 825, 112 S.Ct. 90, 116 L.Ed.2d 62 (1991); *Giwa,* 831 F.2d at 545; *Micheli,* 487 F.2d at 430–31.

The "relationship" approach has not been without its critics. *See State v. Jackson,* 873 P.2d 1166, 1168 (Utah App.1994) and *Andrews,* 549 N.W.2d at 217. In *State v. Nabarro,* 55 Haw. 583, 525 P.2d 573, 577 (1974), the shortcomings of the "relationship" approach were identified as follows:

> [P]olice cannot realistically be expected to avoid searching the property of a mere visitor to the premises unless they are aware of its ownership. Absent a requirement of such awareness, the effective execution of a warrant to search a place would be impossible since the police could never be sure that a plausible repository for items named in the warrant belongs to a resident, and hence is searchable, or to a non-resident, and hence is not searchable. Because of this, without notice of some sort of the ownership of a belonging, the police are entitled to assume that all objects within premises lawfully subject to search under a warrant are part of those premises for the purpose of executing the warrant.

We agree that the "relationship" test used by several courts provides an unworkable and impractical analysis given the time constraints attendant upon most searches. Even the most particular description of "the place to be searched" will not avoid the uncertainty of the ownership of "plausible repositories" in some circumstances. The holding in *United States v. Gottschalk,* 915 F.2d 1459, 1461 (10th Cir.1990) echoes the difficulties inherent in the real-life application of the "relationship" test:

> [Defendant] urges that we should adopt a strict limitation on the scope of a "premises" search warrant to exclude any vehicles other than those actually owned or controlled by the owner of the premises. The difficulty with such a limitation, as formulated, is demonstrated by this case. The circumstances surrounding the search of the Cadillac were such that at the time the officers decided to proceed it would have been difficult to determine with precision whether the car was in fact controlled by [the person identified in the warrant] or whether [defendant] retained full control and dominion. * * * A legal limitation based on such a difficult and uncertain factual determination is neither practical nor desirable where it must be applied in cases such as this, late at night, in the course of considerable surrounding police activity, without the benefit of full factual inquiry, and by non-legally trained personnel.

The Tenth Circuit Court of Appeals' solution applied a "notice" approach:

> We believe the better rule in these circumstances is to define the scope of the warrant to include those automobiles either actually owned or under the control and dominion of the premises owner, or, alternatively, *those vehicles which appear, based on objectively reasonable indicia present at the time of the search, to be so controlled. Thus where the officers act reasonably in assuming that the automobile is under the control of the premises owner, it is included in the warrant.*

*Id.* at 1461 (emphasis added). That analysis supported our decision in *Guerra,* 897 P.2d at 459, upholding the admission of evidence seized from two vehicles adjacent to the premises of the defendant.

■ We extend that reasoning here and adopt the "notice" test in circumstances where we must determine the reasonableness of the search of a visitor's personal effects while executing a premises search. In Wyoming, " 'the permissibility of a particular law enforcement practice is judged by balancing its intrusion on … Fourth Amendment interests against its promotion of legitimate government interests.' " *Jones v. State,* 902 P.2d 686, 692 (Wyo.1995) (*quoting Texas v. Brown,* 460 U.S. 730, 737–39, 103 S.Ct. 1535, 1541–42, 75 L.Ed.2d 502 (1983)). *See also Collins v. State,* 854 P.2d 688, 692 (Wyo.1993) and *Saldana,* 846 P.2d at 610–11 (holding that reasonableness of seizure of a person is determined by balancing the nature of the intrusion against the governmental interest). After reviewing the approaches used by other courts, we are persuaded that the "notice" test affords the best balance between the

legitimate interests of both the individual and law enforcement.

■ Under the "notice" test, police officers may assume that all containers on the premises may be searched unless they know or should know that the containers belong to someone not contemplated in the warrant or amenable to search on the basis of probable cause. The practical parameters applied under a "notice" approach are that police may search the visitor's belongings on the premises under a proper assumption that all personal property belongs to the resident if:

1. The visitor's personal items might serve as a plausible repository of the object of the search, unless the officer knows the property belongs to another; and

2. If the officer knows the property belongs to the visitor, they may not rely on the authority conferred by the warrant unless;

3. Someone within the premises had the opportunity to conceal the contraband within the personal effects of the visitor immediately prior to the execution of the warrant.

*State v. Thomas,* 818 S.W.2d 350, 359 (Tenn. Crim.App.1991) (search of visitor's purse beyond scope of warrant to search premises of male suspect because not reasonable to believe suspect owned woman's pocketbook).[4] The "notice" test provides law enforcement officers clear guidelines, and can be quickly implemented in an emergency situation, but does not unnecessarily abrogate individualized Fourth Amendment protection merely because a jacket is removed or a purse is placed on a floor or table. Moreover, the "notice" approach most closely adheres to our analysis in previous cases. *See Gronski v. State,* 910 P.2d 561, 564 (Wyo.1996) (war-

rantless search of duffel bag in trunk of car held proper because probable cause existed to believe the duffel bag contained marijuana) and *Hunter,* 704 P.2d at 717 (warrantless search defined by the object and the places in which there is probable cause to believe it may be found).[5]

■ Applying the "notice" test to the facts as related by the arresting officer, we find that there was no probable cause to search Houghton's purse. The officer testified that there were two women passengers and a male driver in the car when it was stopped. The officer searched the car based on his belief that the syringe indicated that *the male driver* may have contraband in his car. At the time of the search, the officer had no knowledge which indicated Houghton also possessed drugs. The purse was found behind the area where Houghton was seated until ordered out of the vehicle. The officer further acknowledged that it was a "lady's purse" and that "men do not carry purses * * *."

At that point, the officer knew, or should have known, that the purse was not the possession or in the control of the driver, but was the personal effect of one of the non-suspect passengers. Thus, under the "notice" test, the purse was not within the scope of the search of the automobile unless the officer had some reason to believe that "someone within the premises has had the opportunity to conceal the contraband within the personal effects of the visitor immediately prior to the execution of the * * * [search]." *Thomas,* 818 S.W.2d at 359.

Since part of Houghton's defense was that one of the "wallets" was not hers, the State went to great lengths to show there was no opportunity for the occupants of the car to

---

**4.** *See also Waters v. State,* 924 P.2d 437, 440 (Alaska App.1996) (absent a clear notice that the purse belonged to female visitor rather than female identified in warrant, search upheld); *People v. McCabe,* 144 Cal.App.3d 827, 192 Cal.Rptr. 635, 636–37 (1983); *Wright v. State,* 221 Ga.App. 559, 472 S.E.2d 128, 129 (1996) (jacket could have belonged to anyone in home, search upheld, distinguishing *Childers v. State,* 158 Ga.App. 613, 281 S.E.2d 349 (1981) where officers should have known that purse belonged to visitor because she was only female on premises); *Nabar-*

ro,* 525 P.2d at 576–78; and *State v. Lambert,* 238 Kan. 444, 710 P.2d 693, 697–98 (1985).

**5.** The "automatic companion rule" adopted in our recent holding in *Perry,* 927 P.2d 1158 is premised solely on the "justifiable concern for officer safety in the context of a lawful arrest of Perry, Jr. * * *." *Id.* at 1163. It is, therefore, not applicable in Houghton's case as there was no arrest prior to the search and no reasonable belief that the purse concealed any weapon which would endanger the officers.

place contraband in Houghton's purse immediately prior to or during the stop. The officer testified that he used his lights to illuminate the inside of the car at all times, and that there were no "unusual movements or sudden movements within the vehicle itself." He also testified that the occupants were constantly under his observation or that of another officer. The officer's testimony clearly established that there was no reason to believe the object of the search was placed in the purse prior to the stop, no probable cause to believe that either woman was carrying drugs, and no reason to believe that the purse belonged to Young. Consequently, the closed purse was not within the scope of the warrantless search for the contraband in the possession or control of the driver. Since the search of the purse was not based on probable cause or within the scope of the search of Young's car, the district court erred in denying Houghton's motion to suppress the evidence found therein.[6]

The State does not rely on any of the tests described above, but urges that we follow the recent Colorado Supreme Court ruling in *People v. McMillon*, 892 P.2d 879 (Colo. 1995). There, the female driver and McMillon, the female passenger, were asked to step outside a vehicle which had been stopped for equipment violations. While questioning the driver, the deputy observed a syringe "between the driver's seat and the console between the seats." *Id.* at 880. The deputy then arrested the driver and proceeded to conduct an "inventory search incident to the driver's arrest." *Id.* During the search of the vehicle, the deputy opened McMillon's purse which she had left on the passenger's seat and discovered controlled substances within. *Id.* at 880–81.

In support of its conclusion that the ownership of the purse was irrelevant under the automobile exception, the Colorado Supreme Court offered this cursory analysis:

> We further conclude that neither *Acevedo* [500 U.S. 565, 111 S.Ct. 1982, 114 L.Ed.2d 619] nor *Ross* [456 U.S. 798, 102 S.Ct. 2157] requires a separate determination of probable cause for each closed container found within a vehicle. Accordingly, because Deputy Hicks had probable cause to search the vehicle under the automobile exception, he also had probable cause to lawfully search McMillon's purse located within the passenger compartment of the automobile, irrespective of whether Deputy Hicks knew or should have known that the purse belonged to McMillon.

*McMillon*, 892 P.2d at 883. Although the facts of *McMillon* may be distinguished from those before us by the gender and arrest of the suspect, the Colorado Supreme Court's analysis does not so much as nod to the articulation of the individual nature of Fourth Amendment guarantees found in *Ybarra*, 444 U.S. 85, 100 S.Ct. 338. Neither does the analysis attempt to rationalize the governmental intrusion against a reasonable expectation that one's closed purse or wallet will not be searched in the absence of probable cause that it may contain evidence of a crime.[7] Indeed, *McMillon's* holding ostensibly allows officers to order non-suspect passengers to leave their belongings in a car while they must exit, so that the car and its contents may be searched.

"The word 'automobile' is not a talisman in whose presence the Fourth Amendment * * * disappears." *Coolidge v. New Hampshire*, 403 U.S. 443, 461, 91 S.Ct. 2022, 2035,

---

**6.** It is uncontested that there was no consent to search the purse, and no arrest other than that based on the contraband found within the purse. Neither was there reason to believe that the purse contained any weapon. Therefore, no alternative basis on which to uphold the search of Houghton's purse need be discussed.

**7.** Neither *Love v. State*, 254 Ga. 697, 334 S.E.2d 173 (1985) nor *State v. Vermuele*, 241 Neb. 923, 492 N.W.2d 24 (1992) contain facts similar to the case before us. In *Love*, 334 S.E.2d at 174, the court held that the warrantless search of defendant's companion's purse was authorized. Defendant was convicted of possession of drugs, largely on evidence furnished by his female companion who had physical possession of the contraband at the time of arrest and who had given consent to search her boyfriend's car where her purse was located. *Id.* In *Vermuele*, 492 N.W.2d at 30–32, the court held that the warrantless search of a passenger's wallet was valid because probable cause existed to search the vehicle for contraband. However, in that case, the passenger was searched and drugs were found on his person, leading to his arrest prior to the search of the wallet. *Id.* at 29.

29 L.Ed.2d 564 (1971). "The purpose of the Fourth Amendment's requirement of reasonableness 'is to preserve that degree of respect for the privacy of persons and the inviolability of their property that existed when the provision was adopted—even if a later, less virtuous age should become accustomed to considering all sorts of intrusion "reasonable." ' " *Richards v. Wisconsin,* 520 U.S. 385, —— n. 4, 117 S.Ct. 1416, 1421 n. 4, 137 L.Ed.2d 615 (1997) (*quoting Minnesota v. Dickerson,* 508 U.S. 366, 380, 113 S.Ct. 2130, 2139, 124 L.Ed.2d 334 (1993), Scalia, J., concurring). We cannot agree that the automobile exception removes from judicial review *all* searches of *all* containers physically capable of containing the object of the search. To so rule would provide a wholesale surrender of Fourth Amendment protection upon entering an automobile.

## V. CONCLUSION

Generally, once probable cause is established to search a vehicle, an officer is entitled to search all containers therein which may contain the object of the search. However, if the officer knows or should know that a container is the personal effect of a passenger who is not suspected of criminal activity, then the container is outside the scope of the search unless someone had the opportunity to conceal the contraband within the personal effect to avoid detection. Here, the officers knew or should have known that the purse did not belong to the driver, but to one of the passengers. Since there was no probable cause to search the passengers' personal effects and no reason to believe that contraband had been placed within the purse, the search was unreasonable and in violation of the Fourth Amendment right to be free from such governmental intrusion. We, therefore, reverse the district court's denial of Houghton's motion to suppress and remand this case for disposition in accord with this opinion.

GOLDEN, Justice, dissenting, with whom THOMAS, Justice, joins.

I respectfully dissent. A number of points are now settled in Fourth Amendment jurisprudence:

1. The touchstone of the United States Supreme Court's Fourth Amendment analysis is always "the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security." *Pennsylvania v. Mimms,* 434 U.S. 106, 108–09, 98 S.Ct. 330, 332, 54 L.Ed.2d 331 (1977) (quoting *Terry v. Ohio,* 392 U.S. 1, 19, 88 S.Ct. 1868, 1878–79, 20 L.Ed.2d 889 (1968)).

2. Reasonableness depends "on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers." *Id.* at 109, 98 S.Ct. at 332 (quoting *United States v. Brignoni–Ponce,* 422 U.S. 873, 878, 95 S.Ct. 2574, 2579, 45 L.Ed.2d 607 (1975)).

3. It is reasonable for a law officer as a matter of course to order the driver of a lawfully stopped motor vehicle to exit his vehicle. *Id.* at 110–11, 98 S.Ct. at 333.

4. It is reasonable for a law officer as a matter of course to order the passengers of a lawfully stopped motor vehicle to exit the vehicle. *Maryland v. Wilson,* 519 U.S. 408, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997).

5. On a theory of probable cause to search a motor vehicle, the automobile exception to the warrant requirement permits a search of the entire vehicle and anything in it that could contain the items being searched for. *United States v. Ross,* 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982); *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925).

6. "The scope of a warrantless search of an automobile thus is not defined by the nature of the container in which the contraband is secreted. Rather, it is defined by the object of the search and the places in which there is probable cause to believe that it may be found." *Ross,* 456 U.S. at 824, 102 S.Ct. at 2172.

7. In *Ross,* the United States Supreme Court has an opinion in automobile search cases that provides "specific guidance to police and courts in this recurring situation." *Id.* at 826, 102 S.Ct. at 2173 (Powell, J., concurring) (quoting *Robbins v. California,* 453 U.S. 420, 435, 101 S.Ct. 2841,

2850, 69 L.Ed.2d 744 (1981) (Powell, J., concurring in judgment)).

8. Fourth Amendment doctrine is primarily intended to regulate the police in their day-to-day activities and, therefore, should be expressed in terms that are readily applicable by the law officer in the context of his or her law enforcement activities. *New York v. Belton,* 453 U.S. 454, 458, 101 S.Ct. 2860, 2863, 69 L.Ed.2d 768 (1981). "A highly sophisticated set of rules, qualified by all sorts of ifs, ands, and buts and requiring the drawing of subtle nuances and hairline distinctions, may be the sort of heady stuff upon which the facile minds of lawyers and judges eagerly feed, but they may be 'literally impossible of application in the field.'" *Id.* (quoting from LaFave, "Case–By–Case Adjudication" versus "Standardized Procedures": The Robinson Dilemma, 1974 SUP.CT. REV. 127, 141).

9. "When a legitimate search is under way, and when its purpose and its limits have been precisely defined, nice distinctions ... between glove compartments, upholstered seats, trunks, and wrapped packages, in the case of a vehicle, must give way to the interest in the prompt and efficient completion of the task at hand." *Ross,* 456 U.S. at 821, 102 S.Ct. at 2171.

Against this backdrop of settled principles, the majority would create an "ifs, ands, and buts" qualifier in the case of the female passenger's purse which is left behind in the male driver's automobile when all of the automobile's occupants have exited the automobile in response to the law officer's lawful request. The majority now requires the law officer to establish an independent probable cause with respect to the purse left behind in the automobile's passenger compartment. In my judgment, the passenger's act of leaving her purse behind as she exited the automobile demonstrates an absence of a reasonable expectation of privacy in that purse. In other words, by leaving the purse behind, the passenger has taken no precaution in order to maintain her privacy in that particular container. *See Dean v. State,* 865 P.2d 601, 613 (Wyo.1993) (stating factors to consider in determining whether an individual possesses a reasonable expectation of privacy).

The object of the law officer's lawful search in this case was a controlled substance which could have been secreted in a small container, such as the purse which the passenger Houghton had left behind in the passenger compartment. Common sense tells us that the transfer of small containers of controlled substances between an automobile's occupants can occur swiftly, silently, effortlessly, and without detection by even the keenest observer. As for me, the words of those who have carefully studied the problem have force, "it seems absurd to say that the occupants can take the narcotics out of the glove compartment and stuff them in their pockets, and drive happily away after the vehicle has been fruitlessly searched." 3 WAYNE R. LAFAVE, SEARCH AND SEIZURE § 7.2(e) at 508 (3d ed.1996) (quoting from Model Code of PreArraignment Procedure § SS 260.3(2) at 551–52 (1975)).

I would uphold the district court's denial of Houghton's motion to suppress the incriminating evidence found in her purse. Measured by the United States Supreme Court's Fourth Amendment doctrine, the law officer here acted reasonably.